## Revenue Cycle Management Service and Agreement

This Revenue Cycle Management Service Agreement ("Agreement") is entered into and made effective the 1st day of October, 2010 by and between Pearl River County Hospital, a community hospital formed and operating under the laws of the State of Mississippi (hereafter "HOSPITAL") and Performance Accounts Receivable, LLC, a Mississippi limited liability company (hereafter "PAR").

### Recitals

WHEREAS, Pearl River County Hospital is engaged in the business of operating an acute care hospital and medical center and has its principal place of business at 305 W Moody Street, Poplarville, Mississippi 39470; and

WHEREAS, PAR is in the business of providing management expertise in the area of billing and collections services for the health care industry; and

WHEREAS, HOSPITAL desires to arrange for the services of PAR as an independent contractor to furnish such services as set forth in the Scope of Services, which is attached as Exhibit A; and

WHEREAS, the parties desire to enter into the Agreement in order to provide a full statement of their respective responsibilities in connection with the delivery of services hereunder.

NOW, THEREFORE, for and in consideration of these premises, the Parties make and enter into this Agreement upon the terms and conditions stated hereinbelow:

### Operative Provisions

1. Services to Be Provided by PAR

1.1 PAR shall provide the services listed in the Scope of Services attached as Exhibit A and incorporated herein by reference (hereinafter referred to collectively as "Services"), in accordance with the terms as set forth below.

1.2 PAR shall hold meetings no less than quarterly with key HOSPITAL management for progress and performance reporting and problem identification and resolution.

1.3 PAR shall provide general Business Office Management as well as Revenue Cycle Management Services for HOSPITAL.

1.4 PAR shall provide HOSPITAL with detailed, monthly operating reports demonstrating revenue generation, accounts receivable status, collection activities and Quarterly Cost Reports.

2. Obligation of Hospital

2.1 HOSPITAL shall make accessible to PAR all available records and information relevant to the rendering of Services pursuant to the Agreement.

2.2 HOSPITAL shall provide workspace, access to HOSPITAL's existing operating software and internet/network connections as reasonably required by PAR. HOSPITAL shall also provide PAR access to all appropriate documents and pertinent billing and information systems, as well as, the daily cash posting ledger to verify payments received. HOSPITAL warrants that accounts placed

EXHIBIT 1

with PAR are not now and have not previously been placed with or worked by other outside organizations.

3. Independent Contractor Relationship.

3.1 In performance of this Agreement, it is mutually understood and agreed that the PAR is at all times acting and performing the Services as an independent contractor for HOSPITAL. PAR will perform the Services in a legal and ethical manner. PAR represents and warrants that the Services shall be performed in accordance with applicable law, recognized standards of professional practice and the terms of the Agreement.

3.2 PAR shall have the right to perform the Services for individuals or entities other than HOSPITAL during the term of this Agreement, so long as such performance for other individuals or entities does not impair PAR's ability to carry out its duties hereunder.

3.3 PAR may, at PAR's own expense, employ such personnel, as PAR deems necessary to perform the services required of Par by this Agreement. HOSPITAL may not control, direct, or supervise PAR employees in the performance of those services. PAR assumes full and sole responsibility for the payment of all compensation and expenses of these employees and for all state and federal income tax, unemployment insurance, Social security, disability insurance and other applicable withholdings.

3.4 PAR shall perform the Services required by this Agreement in a timely manner and at any place or location and at such time as PAR shall determine, or as mutually agreed by the parties.

3.5 The parties understand that since the PAR shall be an independent contractor, the PAR shall not have the right to participate in any benefits or programs sponsored by HOSPITAL on behalf of its employees including, but not limited to Worker's Compensation insurance. Moreover, PAR shall be responsible for its own worker's compensation insurance and for compliance with all applicable state or federal income and payroll tax laws and regulations for its own employees, representatives, agents and subcontractors.

3.6 The IRS requires that HOSPITAL must provide a Statement of Recipients of Non-employee Compensations (Fore 1099-NEC) for each individual to whom HOSPITAL has paid at least Six Hundred Dollars ($600) in fees, commissions, or any other form of non-employee compensation. This information will also be reported to the IRS. The amount shown on the IRS form will represent payment to PAR for services rendered pursuant to this Agreement. Because PAR is not treated as an employee of HOSPITAL, this form is the only required notice for tax purposes that will be provided. Forms 1099 will be filed on a calendar year basis.

3.7 PAR understands and acknowledges that PAR has been selected by HOSPITAL based upon the warranties set forth in this Agreement and on PAR's representations that PAR has the necessary training and experience to perform the Services and that PAR will meet or exceed all standards, which are required by federal and state law and/or regulations, applicable to PAR.

4. Access to Documentation.

4.1 Federal Requirements
4.1.1 For the purpose of implanting Section 1861 (v)(1)(1) of the Social Security Act, as amended, and any written regulation thereto, PAR agrees to comply with statutory requirements governing the maintenance of documentation to verify the cost of services rendered under this Agreement as follows:

4.1.2 Until the expiration of six (6) years after the furnishing of such services pursuant to this Agreement, PAR shall make available, upon written request by HOSPITAL and/or the Secretary of Health and Human Services, or upon request by the Comptroller General, or any of their duly

STATE AUDITOR SDT001036

authorized representatives, the contractors books, documents and records of such PAR that are necessary to certify the nature and extent of such cost.

4.1.3 If the PAR carries out any of the duties of this Agreement through a subcontract, with a value or cost of Ten Thousand Dollars ($10,000) or more over a twelve (12) month period, with a related organization [as that term is defined with regard to a provider tin Title 42 of the code of Federal Regulations section 405.427 (b)], such subcontract shall make available, upon written request to the Secretary, or upon request to the Comptroller General, or any of their duly authorized representatives, the subcontract, and books, documents and records of such organization that are necessary to verify the nature and extent of such costs.

5. Payment and Billing

5.1 The PAR shall be entitled to payment from HOSPITAL at a rate set forth in the Rate Schedule attached as Exhibit A and incorporated herein by reference, to be computed and paid within thirty (30) days from receipt of an undisputed invoice.

5.2 HOSPITAL shall pay no other charges without prior written approval.

6. Term of Agreement

6.1 The term of this Agreement shall be for a period of three years from October 1, 2010, to September 30, 2013, unless terminated sooner as provided in Section 7.

7. Termination.

7.1 Either party may terminate this Agreement without cause for any reason at any time with such termination to be effective following ninety (180) days written notice to the other party.

7.2 In the event that this Agreement is terminated prior to the completion of the Services as stated herein, the PAR shall deliver to HOSPITAL all work products completed up to the effective date of termination. HOSPITAL shall pay PAR for all work received and deemed acceptable, at HOSPITAL'S reasonable discretion, up to the effective date of termination.

7.3 Immediately upon termination of this Agreement by either party, HOSPITAL shall pay PAR any funds due it pursuant to this Agreement through the effective date of termination.

8. Notice

8.1 All notice and other communications that either party may desire or may be required to delivered in person or by depositing the same in the United States mail, postage prepaid, certified or registered mail, or by electronic facsimile, addressed or delivered as follows:

If to (Pearl River County Hospital)
Mike Boleware
Pearl River County Hospital
305 W Moody Street
Poplarville, MS 39470

If to (PAR)
Wade Walters
Performance Accounts Receivable, LLC

104 Bocage Court
Hattiesburg MS 39402

8.2 Either party may change the address to which notices are to be delivered by giving notice at the location and as hereinabove provided. Any notice shall be deemed to have been given, if hand delivered, or sent by overnight courier, as of the date delivered or if sent by electronic facsimile when confirmed in writing, or if mailed as provided herein, on the third day after mailing.

9. Indemnification

9.1 PAR shall defend, indemnify and hold HOSPITAL harmless for any and all loss obligation, claim, liability, settlement, payment, award, judgment, fine, penalty, interest, charge, expense, including cost of suit and reasonable attorney's fees and disbursements, damages or deficiency, or other charge incurred or required to be paid due to any claim arising out of or relating to PAR's negligent acts or omissions and/or willful misconduct in the performance of this Agreement or any violation by PAR of any law or regulation. This indemnity shall survive and remain in effect beyond the termination of this Agreement.

10. Insurance.

PAR shall at all times during the term of this contract carry at its own expense: general, and professional liability insurance coverage in an amount in excess of one million dollars ($1,000,000) per each occurrence. PAR shall provide HOSPITAL with up to date certificates of insurance upon commencement of this Agreement, and from time to time throughout the Agreement upon request by HOSPITAL.

11. Intentionally omitted.

12. Attorney's Fees.

12.1 In the event either Party is required to incur attorney's fees and expenses to enforce any provision of this Agreement, the prevailing Party shall be entitled to receive from the other Party such reasonable attorney's fees and expenses.

13. Trade Secrets.

13.1 So long as this Agreement remains in effect, PAR will have access to and become acquainted with various trade secrets, consisting of management, financial and operational materials, and methods and processes, and compilations of information, and records and specifications of HOSPITAL, which are owned by HOSPITAL and which are regularly used in the operation of HOSPITAL'S business. PAR acknowledges that such information is secret and confidential and that HOSPITAL disclosed the same to PAR for the purposes set forth herein. PAR shall not disclose any such secrets, directly or indirectly, or use them in any way either during the term of this Agreement or at any time thereafter, except as required in the course of its performance in accordance with this Agreement. All files, records, documents, drawings, specifications, equipment and similar items relating to the business at HOSPITAL, whether received from HOSPITAL or prepared by PAR or those acting on behalf of PAR, shall remain the property of HOSPITAL and shall be treated in a confidential manner by PAR so as to safeguard its proprietary nature.

13.2 All patient records and data related to the Services rendered and all statistical, financial, confidential, and/or personal data relating to the patients of HOSPITAL shall be kept in the strictest confidence by PAR and its employees. PAR acknowledges that remedies at law may be inadequate to protect against breach of this section, and PAR hereby in advance agrees to the granting of injunctive relief in favor of HOSPITAL without proof of actual damages, in addition to and without limiting Hospital's ability to obtain any other remedy otherwise available, including

STATE AUDITOR SDT001038

monetary damages.

14. Governing Law.

14.1 This agreement shall be governed by and construed under the laws of the State of Mississippi.

15. Force Majure.

15.1 Notwithstanding any other provisions contained herein, neither party shall be liable to the other an shall not be deemed to be in default hereunder, for the failure to perform or provide any of the services or obligations to be performed or provided by the party, pursuant to the Agreement, if such failure is a result of an act of God, or any other event which is beyond the reasonable control of the party or which was not reasonably foreseeable by the parties on the date hereof.

16. Entire Agreement.

16.1 This Agreement embodies the entire agreement and understanding between the parties with respect to the subject manner of this Agreement and supersedes all prior and contemporaneous oral and written agreements with respect hereto.

17. Modifications and Waiver.

17.1 This Agreement can be amended only with a written agreement executed by the parties at the time of the modification. No breach of any provision hereof can be waived unless in writing. Waiver of any one breach of any provision hereof shall be deemed a waiver of any other breach of the same or any other provision hereof.

18. Severability.

18.1 In the event any provision of this Agreement is declared or held to be ineffective or violative of any law or regulation by any governing authority or court of competent jurisdiction, then such provision shall be deemed stricken from this Agreement, and all other provisions shall remain in full force and effect as if the stricken provision had never been included in this Agreement.

19. Interpretation

19.1 No provision in this Agreement is to be interpreted for or against any party because that party or that party's legal representative drafted such provisions.

20. Assignment.

20.1 Neither party may assign this Agreement without prior written consent of the other party. Notiwthstanding this general prohibition on assignment, HOSPITAL may assign or transfer this Agreement at any time and without consent of PAR in the event of a sale or lease of the HOSPITAL and/or its assets or in the event HOSPITAL enters into a full-service, general management agreement for operations of the facility.

22. Qualifications and Policy Adherence.

22.1 PAR hereby agrees to abide by all HOSPITAL policies and procedures during the course of providing Services as stated herein. PAR agrees to notify HOSPITAL personnel if there are any changes to their certification and licensing status that may impact their ability to provide Services as stated herein.

23. Medicare Exclusion.

23.1 Each party represents and warrants that neither it nor any of its majority owners, officers, or managing employees has ever been excluded from a federal or state health care program. In the event that it or any of its majority owners, officers, or managing employees become the subject of an investigation and/or become excluded from any federal or state health care program, such party shall promptly notify the other party and that party shall have the right to immediately terminate this Agreement without penalty.

24. Laws and Regulations Applicable to PAR.

24.1 PAR acknowledges and agrees that it shall receive individually identifiable health information, which constitutes Protected Health Information ("PHI") under HIPAA and ARRA/HITECH. PAR acknowledges that it is a Business Associate under the provisions of HIPAA/HITECH and agrees to execute a Business Associate Agreement in the form attached hereto as Exhibit B related to the Services performed by PAR hereunder. Further, PAR agrees to comply fully with all laws and regulations applicable to Business Associates, including without limitation, the HIPAA Security Rule and ARRA/HITECH.

In WITNESS WHEREOF, the parties hereto have executed this Agreement on or as of the day and year first above written.

HOSPITAL                                            PAR

Pearl River County Hospital                         Performance Accounts Receivable, LLC

BY: _____                         BY: _____

TITLE: _____                        TITLE: _President_

DATE: _10-1-2010_                                   DATE: _10-1-2010_

STATE AUDITOR SDT001040

## EXHIBIT A

### Scope of Services

PAR will perform Business Office Management Services which will include, but are not limited to, billing and collection services for HOSPITAL for claims that have not been paid. PAR will also perform Revenue Cycle Management Services for Hospital. These services include, but are not limited to, educating HOSPITAL staff and physicians on how to code, bill and process claims so that future claims will have greater success for collection and also follow compliance requirements. In addition, PAR will work with Management and staff to:

1. Develop and implement strategic plan to restructure Hospitals Operations to allow for maximum cost based reimbursement
2. Allocate cost to correctly reflect current operation under Critical Access Hospital Reimbursement
3. Develop new Services and Referral sources that will increase Net Revenues.
4. Train and develop HOSPITAL staff to competently perform billing and collection services in accordance with compliance requirements following expiration or termination of this Agreement.

### PAR will be limited to:

Inpatient, Outpatient, Swing Bed, Rural Health Clinic and Geri Psyche services claims for dates of service after October 1, 2010, billable to all payors. This contract does not cover Home Health Services and Nursing Home Services.

### Work Guarantee

1. PAR hereby agrees to guarantee the work submitted to HOSPITAL under the scope of this Agreement. IF any work does not meet the needs of HOSPITAL as mutually agreed upon, then PAR shall correct said work and resubmit for approval. If the disputed work does not meet HOSPITAL's needs after two (2) attempts at correction by PAR, the HOSPITAL may at its sole discretion, withhold payment for the hours associated with the work in dispute.

### Rate Schedule

PAR shall be paid in accordance with the rates and other fees as listed below:

### Total Contract Rate

HOSPITAL agrees to pay PAR seven percent (7%) of the collected revenue received from Hospital Net Revenues. PAR SHALL BE BILLED FOR SERVICES ON A THIRTY (30) day cycle, based on what was collected during the previous cycle. Due to the unique reimbursement structure of Critical Access Hospitals, HOSPITAL Agrees to pay PAR on collections received as a result of cost based settlements/lump sum adjustment from any third party payers.

PAR will submit a monthly invoice to HOSPITAL that will be due within thirty (30) days of receipt. Invoices shall be presumed to have been received five (5) day after they are mailed. The Remittance address is: 104 Bocage Court, Hattiesburg, MS 39402. Any amount payable under this Agreement and not paid within thirty (30) days will be delinquent and will bear interest at the lesser of one and one-half percent (1.5%) per month or the maximum monthly rate allowed by applicable law.

STATE AUDITOR SDT001041

# BUSINESS ASSOCIATE
# PRIVACY AND SECURITY AGREEMENT

This **PRIVACY AND SECURITY AGREEMENT** (this "**Agreement**") is effective as of October 1, 2010 (the "**Effective Date**"), by and between PEARL RIVER COUNTY HOSPITAL, a community hospital formed and operating under the laws of the State of Mississippi ("**Covered Entity**" or "**CE**"), and PERFORMANCE ACCOUNTS RECEIVABLE, LLC. a Mississippi limited liability company ( "**Business Associate**" or "**BA**").

## RECITALS:

**WHEREAS**, Business Associate is providing certain services (the "Services") to the CE; and

**WHEREAS**, in connection with the performance of Services, CE may disclose to BA certain information that will be subject to protection under the Privacy and Security Standards and BA, as a recipient of PHI from CE, is a "business associate" as that term is defined in the Privacy Standards; and

**WHEREAS**, pursuant to the Privacy and Security Standards, all business associates of CE must agree in writing to certain mandatory provisions regarding the use and disclosure of PHI; and

**WHEREAS**, it is the mutual intent of CE and the Business Associate to comply with the Privacy Standards and the Security Rule; and

**NOW, THEREFORE**, in consideration of the agreements, covenants, terms and conditions herein contained and other consideration, the sufficiency of which is hereby a[cknowledged, Business] Associate he[reby agrees]:

### I.   DEFINITIONS FOR USE IN THIS AGREEMENT

"**Data Aggregation**" shall mean, with respect to PHI created or received by the Business Associate in its capacity as the business associate of CE, the combining of such PHI by the Business Associate with the PHI received by the Business Associate in its capacity as a Business Associate of another Covered Entity, to permit data analyses that relate to the health care operations of the respective Covered Entities.

"**Designated Record Set**" shall mean a group of records maintained by or for CE that is (i) the medical records and billing records about individuals maintained by or for CE; (ii) the enrollment, payment, claims adjudication, and case or medical management record systems maintained by or for a health plan; or (iii) used, in whole or in part, by or for CE to make decisions about individuals. As used herein the term "Record" means any item, collection, or grouping of information that includes PHI and is maintained, collected, used, or disseminated by or for CE.

STATE AUDITOR SDT001042

"**Electronic Media**" shall mean the mode of electronic transmissions. It includes the Internet, extranet (using Internet technology to link a business with information only accessible to collaborating parties), leased lines, dial-up lines, private networks, and those transmissions that are physically moved from one location to another using magnetic tape, disk, or compact disk media.

"**Electronic PHI**" shall have the meaning found in the Security Rule, 45 C.F.R. § 160.103.

"**Individually Identifiable Health Information**" shall mean information that is a subset of health information, including demographic information collected from an individual, and:

(i) Is created or received by a health care provider, health plan, employer, or healthcare clearinghouse; and
(ii) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of healthcare to an individual; or the past, present, or future payment for the provision of healthcare to an individual; and
  (a) Identifies the individual, or
  (b) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

"**Privacy Standards**" shall mean the Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. Parts 160 and 164.

"**Protected Health Information**" or "**PHI**" shall mean Individually Identifiable Health Information that is (i) transmitted by electronic media, (ii) maintained in any medium constituting Electronic Media; or (iii) transmitted or maintained in any other form or medium. "PHI" or "PHI" shall not include (y) education records covered by the Family Educational Right and Privacy Act, as amended, 20 U.S.C. § 1232g; and (z) records described in 20 U.S.C. § 1232g(a)(4)(B)(iv). For instance, PHI includes information contained in a patient's medical records and billing records.

"**Security Rule**" shall mean the Security Standards for the Protection of Electronic Health Information at 45 C.F.R. Part 160 and 164, Subparts A and C.

"**Secretary**" shall mean the Secretary of the U.S. Department of Health and Human Services ("**DHHS**") or any office or person within DHHS to which/whom the Secretary has delegated his or her authority to administer the Privacy Standards, such as the Director of the Office for Civil Rights.

"**Unsecured PHI**" shall have that meaning assigned to it by the American Reinvestment and Recovery Act of 2009 ("ARRA"), and more specifically, the portion of

ARRA known as the Health Information Technology for Economic and Clinical Health ("HITECH") Act, and regulatory guidance issued pursuant thereto.

Unless otherwise provided in this Agreement, capitalized terms in this Agreement shall have the meanings given to them in the Privacy Standards and Security Rule.

## II. OBLIGATIONS OF BUSINESS ASSOCIATE

Section 2.1. **Use and Disclosure of PHI**. Business Associate may use and disclose PHI only as required to satisfy its obligations under the Agreement, as permitted herein, or required by law, but shall not otherwise use or disclose any PHI. Permitted uses and disclosures are described in the Agreement. The Business Associate shall not and shall ensure that its directors, officers, employees, contractors, and agents do not use or disclose PHI received from CE in any manner that would constitute a violation of the Privacy Standards if used by CE, except that the Business Associate may use PHI (i) for the Business Associate's proper management and administration, provided that if Business Associate discloses any PHI to a third party for such a purpose, Business Associate shall enter into a written agreement with such third party requiring that party (1) to hold the PHI confidentially and not to use or further disclose the PHI except as required by law, and (2) to notify Business Associate immediately of any instances of which it becomes aware in which the confidentiality of the PHI is breached, (ii) to carry out the legal responsibilities of the Business Associate, or (iii) to provide data-aggregation services relating to the healthcare operations of CE if required under the Agreement. The Business Associate acknowledges that, as between the Business Associate and CE, all PHI shall be and remain the sole property of CE, including any and all forms thereof developed by the Business Associate in the course of its fulfillment of its obligations pursuant to the Agreement. The Business Associate further represents that, to the extent the Business Associate requests that CE disclose PHI to the Business Associate, such a request is only for the minimum necessary PHI for the accomplishment of the Business Associate's [illegible].

Section 2.2. **Minimum Necessary Standard**. To the extent required by the "minimum necessary" requirements of the Privacy Standards, the Business Associate shall only request, use, and disclose the minimum amount of PHI necessary to accomplish the purpose of the request, use, or disclosure.

Section 2.3. **Safeguards Against Misuse of Information**. The Business Associate shall use all appropriate safeguards to prevent the use or disclosure of PHI other than as permitted under this Agreement.

Section 2.4. **Reporting of Disclosures of PHI**. The Business Associate shall, as soon as practicable, but in no event later than within two (2) days of becoming aware of any use or disclosure of PHI in violation of the Agreement by the Business Associate, its officers, directors, employees, contractors, or agents or by a third party to which the Business Associate disclosed PHI pursuant to Section 2.5, report any such disclosure to CE. In such event, the Business Associate shall, in consultation with CE, mitigate, to the

extent practicable, any harmful effect that is known to the Business Associate of such improper use or disclosure. The Business Associate will report within five (5) days to CE any Security Incident involving electronic PHI created or received by Business Associate for or from CE.

Section 2.5. **Agreements by Third Parties**. The Business Associate shall obtain and maintain an agreement with each agent or subcontractor that has or will have access to PHI, which is received from, or created or received by, the Business Associate on behalf of CE, pursuant to which agreement such agent or subcontractor agrees to be bound by the same restrictions, terms, and conditions that apply to the Business Associate pursuant to the Agreement with respect to such PHI.

Section 2.6.1 **Access to PHI by Individual**. If BA maintains PHI of the CE's patients separate from the CE's records, the Business Associate shall make available to CE such PHI for so long as such information is maintained in the Designated Record Set. In the event any individual requests access to PHI directly from the Business Associate, the Business Associate shall within two (2) days forward such request to CE.

Section 2.6.2 **Access to PHI by Non-Individual**. The Business Associate agrees to notify CE within two (2) business days of the Business Associate's receipt of any request or subpoena for PHI from a person other than the individual.

Section 2.6.3 **Challenges. Denials to Request for Access**. CE shall be responsible for challenging the validity of or denying requests for access as described above and the Business Associate shall cooperate fully with CE in such challenge or denial.

Section 2.7. **Availability of PHI for Amendment**. Within ten (10) days of receipt of a request from CE for the amendment of an individual's PHI or a record regarding an individual contained in a Designated Record Set (for so long as the PHI is maintained in the Designated Record Set), the Business Associate shall provide such information to CE for amendment and incorporate any such amendments in the PHI as required by 45 C.F.R. § 164.526.

Section 2.8. **Accounting of Disclosures.**

    a. If applicable, Business Associate agrees to implement a process that allows for an accounting of disclosures of PHI (required by 45 C.F.R. § 164.528) made by Business Associate to be collected and maintained by Business Associate and its agents or subcontracts. Further, Business Associate agrees that upon termination or expiration of the Agreement, Business Associate shall provide to CE an accounting of all such disclosures made since the compliance date of the Privacy Standards.

    b. Within ten (10) days of notice by CE to the Business Associate that it has received a request for an accounting of disclosures of PHI, other than

STATE AUDITOR SDT001045

penalties, costs or expenses (including without limitation reasonable attorneys' fees) suffered by CE arising from or in connection with any breach of this Agreement, or any negligent or wrongful acts or omissions in connection with this Agreement, by the Business Associate or by its employees, directors, officers, subcontractors, or agents.

Section 2.13. **ARRA-HITECH Provisions**. Business Associate hereby expressly acknowledges that it is bound and regulated by the enactment of certain provisions of the American Reinvestment and Recovery Act of 2009 ("ARRA"), and more specifically, the portion of ARRA known as the Health Information Technology for Economic and Clinical Health ("HITECH") Act. Business Associate shall fully comply with all provisions of the HITECH Act, including without limitation the requirements of the HIPAA Security and Privacy Rules and breach notification standards.

## III.   TERMINATION OF AGREEMENT WITH BUSINESS ASSOCIATE

Section 3.1 **Termination Upon Breach of Provisions Applicable to PHI**. Any other provision of the Agreement notwithstanding, the Agreement may be terminated by CE upon five (5) days' written notice to the Business Associate in the event that the Business Associate breaches any provision contained in this Agreement and such breach is not cured within such five (5)-day period; provided, however, that in the event, that termination of the Agreement is not feasible, in CE's sole discretion, the Business Associate acknowledges and agrees that CE has the right to report the breach to the Secretary, notwithstanding any other provision of the Agreement to the contrary.

Section 3.2. **Return or Destruction of PHI upon Termination**. Upon termination of the Agreement, the Business Associate shall either return or destroy all Protected Health Information received from CE, or created or received by the Business Associate on behalf of CE, and which the Business Associate still maintains in any form. The Business Associate shall not retain any copies of such PHI. Notwithstanding the foregoing, to the extent that CE agrees that it is not feasible to return or destroy such PHI, the terms and provisions of this Agreement shall survive termination of the Agreement, and such PHI shall be used or disclosed solely for such purpose or purposes which prevented the return or destruction of such PHI.

Section 3.3. **CE's Right of Cure**. At the expense of the Business Associate, CE shall have the right to cure any breach of the Business Associate's obligations under this Agreement. CE shall give the Business Associate notice of its election to cure any such breach, and the Business Associate shall cooperate fully in the efforts by CE to cure the Business Associate's breach. All requests for payment for such services of CE shall be paid within thirty (30) days.

## IV.   GENERAL PROVISIONS

STATE AUDITOR SDT001046

Section 4.1. **Effect**. The terms and provisions of this Agreement shall supersede any other conflicting or inconsistent terms and provisions in the Agreement to which this Agreement is attached, including all exhibits or other attachments thereto and all documents incorporated therein by reference. Without limitation of the foregoing, any limitation or exclusion of damages provisions shall not be applicable to this Agreement.

Section 4.2. **Amendment**. The Business Associate and CE agree to amend this Agreement to the extent necessary to allow either party to comply with existing or subsequent laws or regulations, including without limitation ARRA-HITECH Acts, the Privacy Standards, the Standards for Electronic Transactions (45 C.F.R. Parts 160 and 162), and the Security Standards (45 C.F.R. Part 142) (collectively, the "HIPAA Standards") promulgated or to be promulgated by the Secretary or other regulations or statutes, including any applicable state laws. The Business Associate agrees that it will fully comply with all such HIPAA Standards, and that it will agree to amend this Agreement to incorporate any material required by the HIPAA Standards.

Section 4.3 This Agreement may be executed in counterparts, all of which together shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed as of the day and year first written.

PEARL RIVER COUNTY HOSPITAL ("Covered Entity")

By: _____

Title: _Administrator_

PERFORMANCE ACCOUNTS RECEIVABLE, LLC ("Business Associate")

By: _____

Title: _President_

STATE AUDITOR SDT001047