STATE OF MISSISSIPPI

PEARL RIVER COUNTY

## LEASE AGREEMENT

This Lease Agreement made and entered into on this the 1st day of February 2011, by and between Performance Capital Leasing, LLC of 5266 Old Hwy 11 Ste. 70-203; Hattiesburg, MS 39402 hereinafter referred to as "LESSOR, and Pearl River County Hospital of 305 West Moody Street; Poplarville, MS 39470, hereinafter referred to a as "LESSEE".

**WHERAS**, Lessor is in the business of leasing medical equipment herein after referred to as **"EQUIPMENT", (DESCRIPTION: SEE ATTACHMENT A)**

**WHEREAS**, Lessee desires to Lease the Equipment based upon the following terms and conditions:

## WITNESSETH

1. For and in consideration of rent set out herein and the conditions and covenants of the parties contained in the lease, Lessor does hereby lease unto Lessee and Lessee does hereby lease from Lessor that certain equipment, which is attached hereto as Exhibit "A" and incorporated here by referenced and made a part hereof the same as if fully set out herein.
2. During the initial period of the Lease, the Lessee shall pay to the Lessor for rent of the Leased Equipment, the sum of $494.00 per month, payable beginning on 02/01/12 and continuing on the first day of each month thereafter for the entire term of this Lease. The term of this Lease shall be 4 years (48 months), hereinafter referred to as the Minimum Lease Term.
3. A deposit in the amount of $2,764.00 which includes transportation fees, installation fees, inspection fees, documentation fees and the 1st months lease payment is due to start process of lease agreement.

## CONDITIONS OF LEASE AGREEMENT

4. This transaction is a lease and not a sale. The parties understand and agree that Lessee does not acquire by payment of rental any rights, title, or interest in or to the Equipment, except the right to possess and use the Equipment so long as Lessee shall not be in default in performance hereunder. The equipment is and shall remain the sole property of the Lessor.
5. In addition to payment of rentals, Lessee agrees that:
   a) Lessee shall pay any sales, use, and personal property taxes, or other direct taxes levied against, imposed upon the Equipment, its value, use or operation, or levied against or based upon the rentals paid or to be paid hereunder. As used, the term "direct taxes" shall include all taxes, charges and fees levied, assessed or charged by any government, government unit, county, Municipal Corporation or other taxing authority, excluding only income taxes. Without limiting the foregoing, Lessee shall be responsible for reporting and paying directly to the appropriate taxing authorities all personal property taxes respecting the Equipment as well as any interest or penalties imposed by reason of Lessee's failure to report and pay personal property taxes.
   b) Lessee shall comply with all laws, regulations, rules, ordinances, and orders of any applicable government, governmental unit, county or Municipal Corporation relating to use, operation, possession, maintenance or storage of the Equipment. Lessee shall be responsible for all licenses, titles, permits and other certificates that may be required by law or otherwise related to the Lessee's use, operation, possession, maintenance or storage of the Equipment. All certificates of title or registration applicable to the Equipment shall indicate that the Equipment's compliance with local or state building



codes and/or zoning ordinances. Lessee shall not permit the Equipment to be used in any unlawful manner.

c) Lessee will pay all costs and expenses (including attorney fees where recovery of same is not prohibited by law) incurred by Lessor in enforcing any of the terms, provisions, covenants and indemnities of this Lease.

d) Lessee shall not pledge, lend or create any security interest in the Equipment. Lessee shall immediately notify Lessor in enforcing any levy, seizure, or any attempted levy or seizure of the Equipment.

6. a) Lessee agrees, at lessee's sole cost and expenses, to keep the Equipment at all times during the term of this Lease in good repair and operating condition and free of any and all liens and encumbrances and to replace with new parts any and all badly worn or broken parts. Lessee shall not, without Lessor's prior written consent, make any changes, alterations or improvements in or to the Equipment or remove any parts, accessories or attachments from it. Lessee assumes full responsibility for any stairs, railing, furniture, accessories, attachments or other items missing from the Equipment upon return. Lessee further agrees that upon termination of this Lease upon expiration or otherwise, Lessee will return the Equipment in the same condition and state of repair as delivered to Lessee hereunder, ordinary wear and tear excepted.

b) Lessee shall bear the entire risk of loss and damage to Equipment from any and every cause whatsoever. No loss or damage to the Equipment shall impair any obligation of Lessee under this Agreement, including the payments of rent, which shall continue in full force and effect. In the event of loss or damage or any kind whatsoever to the Equipment, at the Lessor's option, the Lessee shall place the Equipment in good repair, conditions and working order. If in the sole and absolute discretion of Lessor the Equipment is determined to be lost, stolen, destroyed or damaged beyond repair, Lessee shall pay Lessor, in cash, the value of the Equipment. After such payment, this Agreement shall terminate and Lessee shall be entitled to Equipment AS IS, WHERE IS, and WITHOUT ANY EXPRESS OR IMPLIED WARRANTY and any warranty under this Agreement shall terminate.

7. a) Lessee has inspected the Equipment and determined that it is acceptable to Lessee. Lessor has not made, and shall not be bound by, any statements, agreements, or representations regarding the Equipment not specifically set out herein, unless the same are reduced to writing and signed by Lessor.

b) If this Lease is for custom Equipment that is ordered in accordance with Lessee's specifications and is not from Lessor's current inventory, the commencement date of this Lease shall be the date on which the Equipment is installed and ready for occupancy by Lessee. If the installation is delayed by any act or omission of Lessee, rental payments shall commence five (5) days after Lessee is notified of completion of the Equipment.

c) Lessor's delivery of the Equipment is subject to delays in manufacturing, delivery or installation due to fire, flood, windstorm, riot, civil disobedience, strike, acts of God, or any circumstances beyond Lessor's control which prevents the manufacture of products or the making of deliveries in the normal course of business. It is further understood and agreed that Lessee will have no claim against Lessor for liquidated damages or any other money damages as a result of Lessee's obligation to perform any contract which Lessee may have entered into in respect of the Equipment to be provided under this Lease.

d) Lessee shall provide free and clear access for delivery and return of the Equipment by standard mobile transport vehicles. Lessee shall provide firm and level ground on no more than a six-inch slope from one end to the other for safe and unobstructed installation for the Equipment. Site selection is the sole responsibility of Lessee, and Lessor shall have no responsibility or liability for any inadequacy of any site selected.

8. Lessor may at any time following the expiration of the Minimum Lease Period, upon five (5) days prior notice to Lessee, requires Lessee to return all the Equipment to the location designated by Lessor or change any of the rates for the Equipment leased hereunder.

a) If Lessee, without any further written agreement, shall continue to possess or occupy the Equipment after the expiration of the Minimum Lease Period or any renewal term thereof, with or without the consent of Lessor, Lessee shall then be deemed to have renewed this Lease on a month-to-month basis subject to renegotiations of the monthly amount to be paid. Until a written extension has been executed by the Lessor and Lessee, the Lessee will be subject to all terms and conditions of this Lease.

b) If Lessor terminates this Lease, such termination shall become effective after the Equipment has been picked up by the Lessor. Until pickup, Lessee shall be responsible for all unpaid rents and charges allocable to the Equipment which has accrued.

c) All or any part of the Equipment manufacture by Lessor, Lessor warrants that it is and shall remain free from defects in materials and workmanship for the term of this agreement. As to any and all Equipment not manufactured by Lessor, Lessor shall grant to Lessee, the extent that it may do so, the benefit of any warranty given by the manufacturer of the Equipment. In any event the Liability of Lessor shall be limited solely to the cost of repairing defects in Equipment. Lessor shall have no liability for the repair of any defect or condition resulting from misuse of the Equipment or from excessive wear and tear. Lessor shall have no Liability whatsoever for any consequential, incidental, or punitive damages, including but not limited to, repairs to Equipment, loss of profits or earnings, loss of sales, claims of Lessee's customers, or any other costs, expense or damages.

d) EXCEPT AS PROVIDED ABOVE, LESSEE AGREES THAT THERE ARE NO WARRANTIES, EXRESSED OR IMPLIED, AND ALL WARRANTIES OF ANY KIND, INCLUDING SPECIFICALLY ANY EXPRESS OR IMPLIED WARRANTIES OF MERCHANTABILITY, SUITABILITY, OR FITNESS FOR ANY PURPOSE, ARE HEREBY DISCLAIMEND AND EXCLUDED BOTH THE EQUIPMENT AND AS TO ANY MAINTENANCE REPAIR WORK PERFORMED BY LESSOR.

9. a) Lessee hereby indemnifies Lessor, and agrees to defend and hold Lessor harmless against all loss, damages, liability, cost and expense which Lessor may sustain or suffer because of:

b) The loss or damage to the Equipment or any part or component thereof, while in the Lessee's possession hereunder;

c) The death, of, injury to, or damage to the property of any third person as a result of, in whole or in part, the use or condition of the Equipment while in the custody, possession, or control of Lessee;

d) Lessee's failure to maintain the Equipment as agreed and provided under this Agreement;

e) Any damage to person or property arising out of Lessee's failure to comply with or perform any of the requirements and provisions of this Agreement;

f) Lessee's failure to comply with any covenant, obligation or indemnity under this Agreement; or

g) Lessor's repossession of the Equipment as provided in this Agreement.

h) The Lessee shall indemnify the Lessor against, and shall hold the Lessor harmless from, any and all claims, actions, suits, proceedings, costs, expenses, damages, and liabilities, including attorney's fees, arising from, connected with, or resulting from the Equipment, including, without limitation, the manufacture, selection, possession, use or operation of the Equipment.

10. a) Lessee further agrees, at Lessee's sole cost and expense, to procure and keep in full force and effect during the term of this Lease, a policy of insurance satisfactory to Lessor as to the insurer and as to the form and amount of coverage, with premiums, prepaid, protecting Lessor against all loss and damages it may sustain or suffer due to (1) the loss of or damage to the Equipment because of collision, fire, theft, lightning, flood, windstorm, explosion or any other casualty or act of nature, for the full replacement value of the Equipment, and (2) the death of, injury to, or damage to the property of, any other person as a result, in whole or in part, of the use or condition of the Equipment while in custody, possession, or control of Lessee with limits of five hundred thousand dollars

($500,000) per occurrences as to bodily injury liability and five hundred thousand dollars ($500,000) per occurrences as to property damage liability or a combined single limit of one million dollars ($1,000,000.00) per occurrence. A certificate of such insurance, naming Lessor (Performance Capital Leasing, LLC) as Additional Insured and Loss Payee, shall be delivered to Lessor prior to delivery to Lessee of the Equipment. It is agreed and understood that procurement of insurance by Lessee as herein provide shall not affect Lessee's covenants, obligation, and indemnities under this Lease, and the loss, damage to, or destruction or any of the Equipment shall not terminate this Lease nor, except to the extent that Lessor is actually compensated by insurance paid for by Lessee, relieve Lessee of any of Lessee's liability hereunder.

b) It is further understood and agreed that, in addition to comprehensive bodily injury and property damage specified in Section 11(a), Lessee agrees to provide comprehensive general liability insurance including coverage for the indemnities specified herein.

11. Lessee shall not remove the Equipment from the location specified by Lessee without prior written approval from the Lessor and shall notify Lessor immediately of any levy or seizure thereof and shall indemnify and hold harmless from and against any loss or damage resulting therefrom. Lessor shall have the right to inspect the Equipment from time to time during the term of this lease and if Lessor believes the same to be overloaded beyond normal capacity or misused, abused or neglected. Lessor may summarily remove and repossess the Equipment upon five days prior written notice to Lessee.

12. At the sole discretion of the Lessor any of the following events or conditions shall constitute a default;

a) Lessee's failure to pay when due any rent o other amount due under this Agreement within twenty (20) day of the due date;

b) Lessee's default in performing any term, covenant or condition of this Agreement;

c) Seizure or attachment of the Equipment under legal process;

d) The filing by or against Lessee of a petition for reorganization or liquidation under any bankruptcy or insolvency law providing for relief or debtors;

e) The voluntary or involuntary assignment of a substantial portion of Lessee's assets for the benefit of Lessee's creditors;

f) Appointment of a receiver or trustee for Lessee or any of Lessee's assets;

g) Institution by or against Lessee of any formal or informal proceeding for dissolution, liquidation, settlement or claims against Lessee or the winding up of Lessee's affairs;

h) Lessee's transfer of all of a material portion of Lessee's assets or inventory not in the ordinary course of business; or

i) Lessee's abandonment of the Equipment.

13. Upon Lessee's default, Lessor shall have the right to exercise any one or more of the following remedies:

a) Declare that the rent due for the Minimum Lease Term is immediately due and bring suit for the total amount of unpaid rent for the entire balance of the Lease Term, without affecting Lessor's rights to title and possession of the Equipment;

b) Repossess the Equipment without notice or demand legal process, prior judicial hearing, liability for trespass, or other damage (WHICH RIGHTS LESSEE HEREBY WAIVES). Such repossession of the Equipment shall not terminate this Agreement unless Lessor so notifies Lessee in writing. If the Lessor shall retake possession of the Equipment and there is any property of value belonging to or in the custody of the Lessee in , upon, or attached the Equipment, Lessor is authorized to take possession of such property and hold it for thirty (30) days at the expense of the Lessee. Thereafter, upon Lessee's failure to reclaim such property, Lessor shall have the right to keep, sell or otherwise dispose of such property;

c) Sell or re-lease the Equipment upon such terms as Lessor determines, with application of the proceeds to Lessee's obligation under this Agreement, deducting from such proceeds all costs and expenses of repossession, transportation, storage, repair and disposition as

well as reasonable attorney's fees and expense. Lessee shall promptly pay any resulting deficiency, together with interest at the legal rate and Lessor's reasonable attorney's fees expended to collect such deficiency, whether or not a legal action is commenced. If Lessor's elects to sell the Equipment, it may be sold at public or private sale, with or without notice to Lessee and with or without having the Equipment at the sale. Lessor shall not be accountable to Lessee for any profit on any disposition of the Equipment. If Lessor is unable to repossess the Equipment for any reason, the Equipment shall be deemed a total loss and Lessee shall pay to the Lessor in cash the value of the Equipment; Revenues losses due to Termination of this Agreement; and/or any and all remedies available to Lessor by law or in equity.

14. All such remedies are cumulative and may be enforced separately or concurrently from time and are in addition to any other rights, or remedies available to Lessor at Law or in equity.

15. Lessor's right of any one default shall not constitute a waiver of any subsequent default by Lessee or a waiver of any other term of this Agreement. Upon Lessee's default no delay or omission of the Lessor in exercising any rights, powers, or remedies accruing to Lessor under this Agreement shall impair any of Lessor's rights, powers, or remedies, nor shall it be construed as a waiver of Lessee's default, or acquiescence thereof, or an acquiescence of any similar default occurring thereafter. Any waiver, consent, or approval of any kind or character by Lessor with respect to Lessee's default or otherwise must be in writing.

16. (a) Lessee shall not make or permit any unlawful use or handling of the Equipment and shall not, without Lessor's prior written consent, make or permit any changes, alteration or improvements in or to Equipment or remove therefrom any parts, accessories, or attachments'

(b) The storage or transportation of any hazardous substances in the Equipment is not permitted and the effects of such substances on the Equipment shall not be considered ordinary wear and tear. If Equipment is determined to have been used to store any such substances, the Lessee will be required to purchase Equipment at its current value.

17. (a) Lessee agrees to comply with, perform and execute all laws, rules, regulations or order of any federal, state or local government (including laws governing toxic waste, hazardous substances and other environmental risks) which in any way affect or are applicable to any of the Equipment or to the use, operation, maintenance or storage thereof, and to indemnify and hold harmless from and against any and all fines, forfeitures, seizures, penalties, and liabilities that may arise from any violation of any such law, rule, regulation or order by Lessee, its employees or against or that may result from the use, possession, operation or condition of any of the Equipment.

(b) Lessee further agrees to indemnify and hold Lessor harmless from and against any and all claims, liens, demands or liability whatsoever arising from any work done on or any material supplied in connection with the operation, maintenance, possession or storage of any of the Equipment from any loss damage to the Equipment, and from and against all loss, damage, claims, penalties, liability and expenses, including attorneys fees incurred because of the storage, maintenance, use, handling, repair, loading, unloading or operation or alleged use or operation of any of the Equipment.

(c) Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense and from any liability to any person on account of any damage to person or property arising out of any failure of Lessee to comply in any respect with and perform any of the requirements and provisions of this Lease.

18. Lessee shall not have the right to assign the Lease or to sublet, rent or otherwise hire out or transfer possession of, any of the Equipment to any person, firm, partnership, association, or corporation, other than Lessor, without the prior written consent of Lessor.

19. Lessor shall have the right to assign this Lease and the rentals reserved hereunder. In the event of an assignment of this Lease by Lessor, the assignee shall acquire all rights and remedies possessed by or available to Lessor under this Lease. The assignee of Lessor's interest shall not be obligated to perform Lessor's obligations under this Agreement.

20. This instrument contains the entire agreement between the parties pertaining to subject matter hereof. No agreements, representation, or understandings not specifically contained herein shall by binding upon any of the parties hereto unless reduced to writing and signed by the parties to be bound thereby. The terms, covenants, and conditions and other provisions of this Lease may hereafter be changed, amended, or modified only by an instrument in writing specifically purporting to do so and signed by the parties to be bound thereby. Any amendment, modification or addendum to this Lease shall be binding on Lessor unless signed by an authorized officer of Lessor.

21. This Lease shall be binding on and inure to the benefit of the Parties hereto and their respective heirs, executors, administrators, legal representatives, successors, and assigns.

22. At the end of the Minimum Lease Term (4 years), Lessee may elect to purchase Equipment at Fair Market Value.

IN WITNESS WHEREOF, Lessor and Lessee have each caused this lease to be executed in duplication on this the 1st of February, 2012.

WITNESSES:

Chandler Smith
Witness Signature

Chandler Smith
Witness Printed Name

LESSOR: Performance Capital Leasing, LLC

Wade Walters
Lessor Signature & Title

Wade Walters
Lessor Printed Name

WITNESSES:

Chandler Smith
Witness Signature

Chandler Smith
Witness Printed Name

LESSEE: Pearl River County Hospital

Mike Boleware CEO
Lessee Signature & Title

Mike Boleware
Lessee Printed Name

**LATE PAYMENTS**

Tenant shall also pay a late charge equal to 5.00 percent of the required monthly payment for each monthly payment that is not paid within 10 days after the due date such late payment.

# Attachment A

LEGAL DESCRIPTION

Model TXR 525

Serial # 36297

1 GP7-TXR525 GP-7 System, includes Stationary Top Table, Non-Rotate Tubestand, Wall Stand and Single Phase, Standard Frequency
500 mA, 125 kVp Generator, consists of:
1 TXR-525 500mA Standard Frequency Generator
Single Phase, 500 mA, 125 kVp (500 mA. @ 100 kVp)
• 600 mAs
• Seven mA stations, 50/100S, 150/200/300/400/500L
• 1/120th thru 6 second timing
• kVp selection, 40 to 125 kVp in 1 kV increments
• Digital displays of kVp, mA and mAs
• Automatic line compensation
1 13-FBT Stationary Medical Table, 325 pound patient load, with grid cabinet
• 72" x 27.5" table top
• Heavy duty grid cabinet
• 103 line, 10 ratio 34-44" focal range grid
• Cassette tray
1 13-RA-84 Floor to Wall Non-Rotate Tubestand (Medical)
• Floor to ceiling or floor to wall mounted with electric locks
• Fits in ceiling heights of 89.5" to 113.5"
• Platform tube mount, angulation dial and operator handles
• Magnetic locks control longitudinal, vertical & tube rotation
• 22" Focal center from column front with 8' rails
• 8 foot tracks
1 13-BF-7E-10 Wall Stand with 17 x 17" Grid Cabinet and 10:1 grid
• Floor to Wall Mount with magnetic locks (84" column)
• 17"x17" grid cabinet
• Front panel
• Cassette tray
• 103 line, 10:1 ratio, 40" to 72" focal range grid
1 E7239FX Tube, 140,000HU, 1.0-2.0, 90 deg
1 CM-150-24-C-125 Certified Manual Collimator with laser light
1 10524-15 15 ft HV Cables
OPTIONS/UPGRADES, ADD PRICE BELOW:
OPT-KLB10-08011 17x17 Super speed bucky, replaces grid cabinet ADD: $1,325 LIST EACH