IN THE CIRCUIT COURT OF PEARL RIVER COUNTY, MISSISSIPPI

PIERCON, INC., ET. AL               PLAINTIFFS/DEFENDANTS

VS.                              CAUSE NO. 2012-0277H

PEARL RIVER COUNTY HOSPITAL           DEFENDANT/PLAINTIFF

*Consolidated with*

PEARL RIVER COUNTY HOSPITAL                 PLAINTIFF

VS                               CAUSE NO. 2013-0203M

WADE WALTERS, HOPE THOMLEY,             DEFENDANT
MIKE BOLEWARE, PERFORMANCE ACCOUNTS
RECEIVABLE, LLC, PERFORMANCE CAPITAL
LEASING, LLC, WELLNESS, INC. d/b/a
WELLNESS ENVIRONMENTS, KINGSBRIDGE
HOLDINGS, LLC d/b/a KINGSBRIDGE
HEALTHCARE FINANCE, STEPPING STONES
HEALTHCARE, LLC, PROJX, LLC, PIERCON, INC.,
CLAY DEARDORFF, and JOHN DOES 1-10

### FIRST AMENDED COMPLAINT

### JURY TRIAL DEMANDED

COMES NOW Plaintiff, Pearl River County Hospital, by and through counsel, and files this its First Amended Complaint against Defendants: Wade Walters, Hope Thomley, Mike Boleware, Performance Accounts Receivable, LLC, Performance Capital Leasing, LLC, Wellness, Inc. d/b/a Wellness Environments, Kingsbridge Holdings, LLC, Kingsbridge Healthcare Finance, Stepping Stones Healthcare, LLC, ProjX, LLC, PierCon, Inc., Clay Deardorff, and John Does 1-10, and would show this honorable Court the following:



EXHIBIT
4

## PARTIES

1.      Plaintiff, Pearl River County Hospital, (the "Hospital"), is a Mississippi non-profit corporation in good standing, whose headquarters and principal place of business is located at 305 West Moody Street, Poplarville, Mississippi, 39470.

2.      Defendant Wade  Walters is an adult resident of Hattiesburg, Forrest County, Mississippi and may be served with process at 119 City Park Circle, Hattiesburg, Mississippi 39401 or wherever he may be found.

3.      Defendant Hope Thomley is an adult resident of Hattiesburg, Forrest County, Mississippi and may be served with process at 923 Weeping Willow Circle, Hattiesburg, Mississippi 39402 or wherever she may be found.

4.      Defendant Mike Boleware is an adult resident of Hattiesburg, Forrest County, Mississippi, and may be served with process at 60 East Lake Road, Hattiesburg, Mississippi 39402 or wherever he may be found.

5.      Defendant Performance Accounts Receivable, LLC is a Mississippi limited liability company with offices located at 104 Bocage Court, Hattiesburg, Mississippi 39402 and may be served with process through its registered agent, Todd A. Boolos, 1211 Washington Street, Vicksburg, Mississippi 39180.

6.      Defendant Performance Capital Leasing, LLC is a Mississippi limited liability company with offices located at 104 Bocage Court, Hattiesburg, Mississippi 39402 and may be served with process through its registered agent, Todd A. Boolos, 1211 Washington Street, Vicksburg, Mississippi 39180.

7.      Defendant Wellness, Inc. d/b/a Wellness Environments is a Tennessee corporation with offices located at Suite D 100, 1 Vantage Way, Nashville, Tennessee, and may be served

with process through its registered agent, Franklin M. Jarman at Suite D 100, 1 Vantage Way, Nashville, Tennessee 37228.

8.      Defendant Kingsbridge Holdings, LLC d/b/a Kingsbridge Healthcare Finance is a Nevada company with offices located at 150 N. Field Drive, Suite 193, Lake Forest, Illinois 60045, and may be served with process through its registered agent, Corporation Service Company, 506 S President Street, Jackson, Mississippi 39201.

9.      Defendant Stepping Stones Healthcare, LLC is a Texas company with offices located at 1821 La Cima Drive, McKinney, Texas 75071, and may be served with process through its registered agent, Clayton Vernon Deardorff at 1821 La Cima Drive, McKinney, Texas 75071.

10.     Defendant ProjX, LLC is a Tennessee company with offices located at 1614 17th Avenue S, Nashville, Tennessee 39212, and may be served with process through its registered agent Matthew J. Devries, Suite 800, 401 Commerce Street, Nashville, Tennessee 37212.

11.     PierCon, Inc., is a Mississippi corporation with offices located at 23 Liberty Place, Hattiesburg, Mississippi and may be served with process through its registered agent, Dennis L. Pierce, 23 Liberty Place, Hattiesburg, Mississippi 39402.

12.     Clay Deardorff, on information and belief, is an adult resident of Texas, and may be served with process at 1821 La Cima Drive, McKinney, Texas 75071 or wherever he may be found.

## JURISDICTION & VENUE

13.     This Court has jurisdiction over the parties and the subject matter of this cause pursuant to Miss. Code Ann. § 9-7-81. In addition, this Court has personal jurisdiction over the nonresident defendants as they all had contracts and dealings with the Hospital to be performed in whole or in part in this State, and have performed work and provided services in this State.

3

Miss. Code Ann. § 13-3-57.  Venue of this cause is proper in this Court under Mississippi Code Ann. § 11-11-3, as the actions and omissions alleged herein occurred at the Hospital which resides in Pearl River County.

**FACTS**

14.　　The Hospital is a community hospital as defined by Miss. Code Ann. § 41-13-10 and as such as is operated by a Board of Trustees ("Board") which is appointed by the Pearl River County Board of Supervisors ("Supervisors").　The Board has such powers and responsibilities as authorized by Miss. Code Ann. § 41-13-35. The Board's actions are documented in the Board's minutes.  Actions not spread upon the minutes of the Board are null and void.

15.　　Prior to the end of 2010, the Hospital was approved as a Critical Access Hospital ("CAH") as defined in 42 U.S.C. § 1395x(mm)(1) and described by 42 USC § 1395i-4(c)(2)(B) and (e).

16.　　As a CAH, the Hospital is reimbursed differently than a general acute care hospital.  For both inpatient and outpatient services as a CAH, the Hospital is paid one hundred one percent (101%) of the reasonable costs of the Hospital for providing the services.  42 U.S.C. § 1395f(l); 42 U.S.C. § 1395m(g)(1).  These sections state:

(l)　　Payment for inpatient critical access hospitals services.

(1)  Except as provided in the subsequent paragraphs of this subsection, the amount of payment under this part [42 USCS §§ 1395c et seq.] for inpatient critical access hospital services is equal to 101 percent of the reasonable costs of the critical access hospital in providing such services.

42 U.S.C. § 1395f(l).  And,

(g)　　Payment for outpatient critical access hospital services.

(1)　　In general.  The amount of payment for outpatient critical access hospital services of a critical access hospital is equal to 101 percent of the

4

reasonable costs of the hospital in providing such services, unless the hospital makes the election under paragraph (2).

42 U.S.C. § 1395m(g)(1).

17. As a CAH, the Hospital files cost reports to receive reimbursement for its costs.

18. Sometime in June 2010, the Hospital hired Defendant Mike Boleware ("Boleware") as Chief Executive Officer. On information and belief, Boleware was and is an employee of or receiving compensation directly or indirectly from one of Defendant's Wade Walters' companies.

19. On September 21, 2010, Boleware made a recommendation to the Board to have Performance Accounts Receivable, LLC "come in and correct/train the Business [sic] office," telling the Board that PAR "usually work[s] under a contract no less than a year for 7% of the collections they recover."

20. On information and belief, Performance Accounts Receivable, LLC ("PAR") is owned or controlled by Wade Walters.

21. On October 5, 2010, the Board agreed to contract with PAR though the terms of the PAR contract, including the duration and compensation are not set forth in the Board's minutes. A copy of the PAR contract is attached hereto as Exhibit A. The PAR contract sets forth an effective date of October 1, 2010 though the Board meeting discussing the PAR contract was not until October 5, 2010.

22. The PAR contract was not for "7% of the collections [it] recovers," as previously represented by Boleware, but for "seven percent (7%) of all collected revenue received from Hospital Net Revenues."

23. **Because the Hospital is a CAH and reimbursed 101% of reasonable costs, the more costs the Hospital incurs and places on its cost report, the more the Hospital receives**

5

from Medicare. Likewise, the more costs the Hospital was reimbursed, the more PAR was paid.

24.     Once the PAR contract was in place, Wade Walters sent Hope Thomley, an employee or agent of PAR, to the Hospital.

25.     While Hope Thomley was acting under the guise of a consultant from PAR, she soon took on the role of Chief Operating Officer ("COO") though the Board never approved her as such.

26.     Without disclosing it to the Board, Hope Thomley was being paid by PAR at the same time she was holding herself out to be the Hospital's COO and was a W-2 employee of the Hospital.

27.     PAR paid kickbacks or incentives to Hope Thomley and others for their work at the Hospital to increase costs which would in turn maximize payment to PAR.

28.     By this time, Wade Walters, through his companies and agents, had taken over all Hospital financial operations and were causing the Hospital to take such actions as to inappropriately and illegally increase the Hospital net revenue to benefit PAR and the agents and employees of that company and others.

29.     On November 30, 2010, Mike Boleware discussed contracting with Stepping Stones Healthcare Corporation ("Stepping Stones") to establish and provide Intensive Outpatient psychiatric therapy ("IOP"), which would in turn again increase fees paid to PAR.

30.     The Stepping Stones contract was never discussed or approved by the Board; however, the Board was told at its January 18, 2011, meeting that Stepping Stones would soon be starting construction/renovation.

6

31.     The Stepping Stones contract, which was executed by Mike Boleware without Board approval, was effective April 1, 2011. A copy of the Stepping Stones contract is attached hereto as Exhibit B.

32.     The compensation structure with Stepping Stones overtime resulted in exorbitant fees being paid to Stepping Stones. These fees were placed on cost reports, resulting in increased fees paid to PAR.

33.     The principal of Stepping Stones, Clay Deardorff, acknowledged that the fees required to be paid to Stepping Stones were out of the general range of fees for its services. However, it agreed to not charge those fees - because they were so out of line with normal and customary fees. According to Clay Deardorff, Wade Walters stated it was acceptable to be paid that much and that Stepping Stones could contribute money to a foundation to be created to support the Hospital. A copy of this email acknowledging the extraordinary fees and foundation payments suggested by Wade Walters is attached hereto as Exhibit C.

34.     On information and belief, Defendant Clay Deardorff, personally and with intent to defraud the Hospital, paid money, as much as sixty thousand dollars ($60,000.00), directly to Defendant Wade Walters to induce him to direct Mike Boleware to execute the Stepping Stones contract that required the Hospital to pay an extraordinary fee. On information and belief, Wade Walters accepted the $60,000.00 and the contract with Stepping Stones was executed by Mike Boleware.

35.     Clay Deardorff's unlawful payment to Wade Walters in order to secure the Stepping Stones contract was made for the purpose of aiding, and in agreement with, Wade Walters and the other Defendants, in accomplishing the establishment of an intensive outpatient psychiatric program as a means of increasing payments to PAR.

7

36.    In 2011, in order to increase reimbursable costs, Performance Capital Leasing, LLC ("PCL"), owned by Wade Walters, began leasing the Hospital equipment.  These lease payments would be included in the cost report, thereby increasing the fees paid to PAR.

37.    Mike Boleware, at the insistence of Wade Walters, and without authority of the Board, executed leases for vans, defibrillators, x-rays and modular buildings with PCL.  These lease agreements were signed by Mike Boleware and contained generous provisions for payment at lease prices above fair market value for the lease of such equipment.  Again, these lease payments could be placed on the cost report and reimbursed, thereby increasing payments to PAR, which was the intent of Boleware and Walters underlying these leases.

38.    On information and belief, PCL is owned or controlled by Wade Walters. Therefore, not only was PAR paid 7% of the reimbursed costs, but Wade Walters and PCL also were paid above fair market value lease payments.

39.    Mike Boleware and Hope Thomley, with the guidance of Wade Walters and as part of a conspiracy to defraud the Hospital and Medicare, also set up a transaction with Wellness Environments ("Wellness") and Kingsbridge Healthcare Financing ("Kingsbridge") whereby the Hospital would lease Wellness equipment through a financing arrangement with Kingsbridge.

40.    On information and belief, according to Wade Walters, Wellness Environments and Kingsbridge, the lease of the Wellness equipment and its installation costs could be claimed as an expense and included on the cost report in the year paid and reimbursed to the Hospital by Medicare.

41.    On information and belief, Kingsbridge employee or agent, Dave Stuart, met with and communicated to the Board of Trustees on or about May 24, 2012, that classifying the Hospital's payments to Kingsbridge as lease expenses could be reimbursed by Medicare.

42.     However, the actual lease proposal, attached to the Kingsbridge lease agreement, included architectural fees, construction fees, and other costs that are not considered recoverable Medicare lease expenses.   Instead, these are capital expenditures which are not considered reimbursable lease expenses by Medicare.   Their reimbursement would be subject to depreciation, which in turn would mean lower reimbursement and less money for Wade Walters and PAR.

43.     The "lease" of renovations to a hospital was not new to Wade Walters and his affiliated companies, or to Wellness Environments, as Wade Walters, or his companies, and Wellness Environments did the same thing at other CAHs around the State, namely, Tallahatchie General Hospital and North Sunflower Hospital.

44.     By "leasing" the renovations associated with the rooms, the Hospital, based on Wade Walters', Kingsbridge's and Wellness Environments' advice, was able to claim the costs on that year's cost report, as opposed to depreciating capital improvements to the facility over time. Thus, the reimbursement to the Hospital was increased, thereby increasing PAR's fees.

45.     On or about August 11, 2011, Hope Thomley presented the Board with the concept of leasing capital renovations from Wellness and mentioned the possibility of either Kingsbridge or Regions Bank financing the lease.

46.     On August 24, 2011, Mike Boleware, without the consent and approval of the Board, executed a Master Equipment Lease Agreement, an Amendment No. 01, a Schedule No. 001 with Kingsbridge, and then on February 17, 2012, Mike Boleware, without the consent and approval of the Board, executed an Amendment No. 1 to Schedule No. 001 (collectively the "Kingsbridge Documents").   A copy of the Kingsbridge Documents are attached hereto as Exhibits D respectively.

47.    The Kingsbridge Documents, which on information and belief are the only Kingsbridge documents associated with the financing of the Wellness project/renovation at the Hospital, do not describe any equipment, but instead include as the items being "leased" a proposal from ProjX, dated in August 2011, which included architectural and other personal services not normally covered by equipment leases.

48.    Though the Master Lease and associated documents were executed, without being approved by the Board, on August 24, 2011, the Agreement for Furniture, Furnishings, Fixtures, Equipment and Systems with Wellness (the "Wellness Agreement") was not executed until September 6, 2011. A copy of the Wellness Agreement is attached hereto as Exhibit E.

49.    On information and belief, Wade Walters' employee or agent, Hope Thomley, was communicating with Kingsbridge and Wellness Environments, who were communicating with each other and ProjX prior to any mention of the Wellness project to the Board of Trustees.

50.    After the unauthorized execution of the Wellness Agreement, Wellness paid $40,000.00 to the Hospital. Although the $40,000.00 payment was described as payment to Hospital for conducting post discharge surveys, it was actually a kickback or at a minimum a set-off against Medicare reimbursable cost.

51.    Wade Walters, through Hope Thomley, Mike Boleware and others, manipulated the filing of the Hospital cost reports to include unallowable costs including the payments to Kingsbridge of the purported "lease" payment and the Wellness $40,000.00 kickback. The inclusion of such costs benefitted Wade Walters, as PAR was receiving 7% of the Hospital's net revenue.

52.    As part of the Wellness Agreement, PierCon was hired as the contractor for the renovation, and ProjX was hired as the architect. Although Wellness was supposed to hire both

10

PierCon and ProjX directly, at the last minute, changes were insisted on by Wellness so that the Hospital would be responsible for more of the PierCon and ProjX fees.

53.     The Hospital was unaware of ProjX until it was introduced to it by Wellness Environments.

54.     Per the terms of the ProjX agreement, which was not approved by the Board of Trustees, dated by ProjX on August 3, 2011 (though not signed by Mike Boleware until October 10, 2011), ProjX was responsible for the oversight and administration of the Wellness project. A copy of this agreement is attached hereto as Exhibit F.

55.     It was ProjX's responsibility, as the architect, to oversee the construction and verify that it was accomplished according to the plans and specifications, and that the construction complied with all building codes included the Life Safety Codes as required by the Mississippi State Department of Health. ProjX breached this and other requirements.

56.     None of the contracts or professional service arrangements with Kingsbridge, Wellness, PierCon or ProjX were approved by the Board nor bid by the Hospital. Instead, the arrangements were approved and entered into by Mike Boleware and Hope Thomley, acting in concert with Wade Walters, as part of the plan to increase reimbursable costs (which would in turn increase PAR's fees).

57.     Though work began on Wellness room renovations, to date of filing this Amended Complaint, the renovation is still not near completion.

58.     On information and belief, neither ProjX nor PierCon filed and received the necessary approvals from the Mississippi State Department of Health to undertake the contemplated and started renovations.

59.     In addition, because of Wade Walters' control directly or through his agents, Hope Thomley and Mike Boleware, PierCon invoiced the Hospital in September 2011 at least 26

11

separate times (all deliberately below the $5,000.00 State bid requirement) for renovations to the Hospital.

60.     On information and belief, these invoices were split in a manner to purposefully avoid the bid law requirements for State entities, on the advice and guidance of Wade Walters, Hope Thomley and Mike Boleware.

61.     On information and belief, each of these "small renovation" projects was placed on the cost report, thereby increasing PAR's compensation.

62.     On information and belief, Wade Walters and others curried favor with Board members by giving them gifts and money to influence and disguise his scheme, which allowed Wade Walters, through his companies and agents, to illegally take over Hospital operations.

63.     Throughout Wade Walters' involvement with and control of the Hospital, and with the help of Hope Thomley and Mike Boleware, the Hospital entered into contracts to unlawfully increase Medicare reimbursement.  Again this increase in Medicare reimbursement increased Wade Walters' compensation through his PAR contract with the Hospital.

64.     PAR was paid over $688,000.00 by the Hospital, and it has sued the Hospital for additional amounts allegedly owed.

65.     Upon termination of the PAR contract and resignation of Mike Boleware, agents and employees of Wade Walters, or one of his affiliated companies, deleted important and proprietary documents from the Hospital's computers and removed documents and items of value from the Hospital without permission of the Board.

66.     In violation of the law, the Hospital believes the agents and employees of Wade Walters, or one of his affiliated companies, also took other documents from the Hospital.

67.     Because of the issues which were discovered when the replacement Board of Trustees came into office, the Hospital made a disclosure to the U.S. Attorney's Office.

68.   In addition to this federal disclosure, the Hospital is forced to amend its cost reports which will impact the amount owed to Medicare by the Hospital.

**COUNT ONE**
**ACTIONS TO DEFRAUD THE HOSPITAL AND MEDICARE**

69.   Plaintiff incorporates and adopts by reference each of the preceding paragraphs as fully set forth here.

70.   The Defendants acted intentionally, willfully, wantonly, maliciously, for profit and without just cause or excuse to defraud the Hospital in order to increase fees paid by the Hospital to them.

71.   Wade Walters and his agents and associates represented to the Board that they were capable of managing and operating a CAH ethically, professionally and within the confines of the law.

72.   These representations were falsely and fraudulently made with the intent to defraud the Hospital in order to maximize the Defendants' profits.

73.   While Wade Walters and his agents did in fact manage and operate the Hospital by entering into contracts and incurring costs to maximize Medicare reimbursement, they did so by abusing the Medicare reimbursement mechanism for CAHs.

74.   On information and belief, Wade Walters, his agents, his companies and the other Defendants have a history of engaging in these actions to defraud Medicare and the CAH with which it is working, and undertook the same actions at the Hospital.

75.   Wade Walters and Wellness Environments engaged in the same practice at North Sunflower Hospital and Tallahatchie General Hospital.

76.   Kingsbridge, Wellness, and Wade Walters knew, as vendors providing services to healthcare providers, that capital improvement projects could not be reimbursed in the year they

were incurred. However, Kingsbridge, Wellness Environments and Wade Walters fraudulently represented to the Board that the renovation costs could be reimbursed if classified as a lease.

77. On information and belief, Wade Walters explained to the Board on or about September 27, 2011, the benefits of classifying the Wellness renovation as a lease versus capitalization of construction. Also, on information and belief, Wade Walters told the Board on or about January 26, 2012, that by doing the Wellness project as an operating lease for five years, the expense goes directly into the department that it benefits and it doesn't really cost money to make money by spending money. On information and belief, Wade Walters added that if something is purchased, it has to be capitalized and depreciated over time, but with an operating lease the Hospital gets the money faster since it is not capitalized.

78. Defendants represented to Hospital that they were incurring costs for the benefit of the Hospital and its patients, following all correct legal procedures for doing so, and that these costs were proper under Medicare and Medicaid procedures. These representations were false; they were material, as Hospital would not have incurred these costs otherwise; Defendants knew them to be false and intended that Hospital act on them in the manner reasonably contemplated, trusting Defendants to work to the benefit of Hospital, which reasonably relied upon them and their representations of expertise and good intent. Hospital was ignorant of the falsity of these representations, relied on their truth, and did so reasonably and with right, as it is in the nature of healthcare reimbursement that an entity such as Hospital relies on experts. Hospital was injured by expending monies not necessary or desirable, in excess of the value of the benefits obtained, and by being thus misled into actions potentially or actually contrary to state and federal law, with damages flowing therefrom, as the proximate consequence of Defendants' fraudulent conduct.

14

79.     As a direct and proximate result of Defendants' actions, Plaintiff has sustained or will incur losses and damages in an amount to be established at trial.

**COUNT TWO**
**CIVIL CONSPIRACY TO TAKE OVER OPERATIONS OF HOSPITAL**
**FOR DEFENDANTS' BENEFIT**

80.     Plaintiff incorporates and adopts by reference each of the preceding paragraphs as fully set forth here.

81.     Wade Walters, individually and through his companies, conspired with his and its agents, namely, Hope Thomley and Mike Boleware, but also others, to unlawfully influence the Hospital to fraudulently abuse the Medicare reimbursement system in an effort to increase PAR's fees.  These fraudulent cost reports may result in the Hospital be subject to substantial repayment obligations.

82.     By engaging in these actions during the time the PAR contract was in place, the Defendants, on information and belief, were able to engage in a continuing series of schemes to defraud the Board and Hospital.

83.     By effectively taking over the Hospital for their own financial benefit, Wade Walters, with the help of the other Defendants was able to increase fees payable to his company, PAR, and for the other Defendants.

84.     Clay Deardorff's payment to Wade Walters in order to secure the Stepping Stones contract aided Wade Walters and the other Defendants in establishing an intensive outpatient psychiatric program in a scheme to increase payments to PAR.

85.     Kingsbridge and Wellness Environments represented to the Board of Trustees that the reimbursement treatment of the Wellness project sought not only to ensure the payment of Kingsbridge's and Wellness Environment's fees, but also to increase fees payable to PAR.

15

86.     On information and belief, Kingsbridge and Wellness Environments "sell" their services and reimbursement theory together at various conferences focused on CAHs and Rural Healthcare.  In addition, in September of 2013, when Wade Walters, PAR, Hope Thomley and Mike Boleware left the Hospital, Dave Stuart, an employee or agent of Kingsbridge, sent an email urging the Hospital's then counsel, to work with Wellness as the deals put together by the co-conspirators at the Hospital started falling apart.

87.     By Wade Walters and his agents effectively operating the Hospital, the Defendants were able to receive fees from the Hospital they otherwise would not have received.

88.     As a direct and proximate result of Defendants' actions, Plaintiff has sustained or will incur losses and damages in an amount to be established at trial.

## COUNT THREE
## FRAUDULENT MISREPRESENTATION TO BOARD OF TRUSTEES

89.     Plaintiff incorporates and adopts by reference each of the preceding paragraphs as fully set forth here.

90.     The Defendants, namely PAR, Wade Walters, Hope Thomley, and Mike Boleware, but not excluding the other Defendants, held themselves out to the Board as being knowledgeable in CAH operations and reimbursement and as promising to do so in an ethical, professional and legal manner.

91.     On information and belief, Wade Walters explained to the Board the difference in capitalization of the construction project versus the treatment of the renovation as an operating lease for reimbursement purposes on or about September 27, 2011 and on or about January 26, 2012.

92.     On information and belief, Kingsbridge employee or agent, Dave Stuart, and Wellness Environment employee or agent on May 24, 2012, personally advised the Board of

16

Trustees regarding the Medicare reimbursement and treatment of the expenses of the Wellness project.

93.    The Board relied on said Defendants' representations in order to provide improved patient care at the Hospital.

94.    However, Wade Walters and the other Defendants repeatedly misrepresented to the Board the scope of their work, what was being done to increase PAR's fees, the reimbursement other Defendants were receiving as a result of the Defendants' actions and advice, and the Medicare reimbursement of "leases" of Wellness equipment and installation.

95.    These misrepresentations were made under circumstances in which the Defendants, acting individually and/or through its officers, agents, servants, representatives or employees, either knew, or in the exercise of reasonable care should have known, that the various misrepresentations were not true.

96.    Further these misrepresentations were also reit erated and disseminated by the Defendants individually and/or by their officers, agents, servants, representatives or employees acting within the course and scope of their authority to increase PAR's fees and increase reimbursement to the other Defendants.

97.    The Board in reasonable reliance on the truth of these misrepresentations, went along with the Defendants' actions which were the direct and proximate cause of the injuries suffered by the Plaintiff.

98.    Except for the Defendants' misrepresentations concerning reimbursable expenses at the Hospital, the Board would not have approved the Defendants' actions.

99.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained or will incur losses and damages in an amount to be established at trial.

**COUNT FOUR**

17

## BREACH OF CONTRACT

100.    Plaintiff incorporates and adopts by reference each of the preceding paragraphs as fully set forth here.

101.    Under the PAR contract, previously attached hereto as Exhibit A, PAR had numerous obligations to the Hospital.  Defendant PAR and Wade Walters failed and neglected to perform PAR's obligations in the PAR contract.

102.    PAR and Wade Walters failed to provide its services in a legal and ethical manner and in accordance with applicable law, and recognized standards of professional practice as required in Section 3.1 of the PAR contract.

103.    PAR and Wade Walters failed to employ at PAR's own expense, employees to provide services for PAR as required by Section 3.3 of the PAR contract as Hope Thomley was at the same time employed by the Hospital while working at the Hospital for PAR and Wade Walters.

104.    PAR and Wade Walters negligently acted and negligently failed to act in carrying out their obligations under the PAR contract in addition to willfully engaging in misconduct in carrying out those obligations in violation of Section 9.1 of the PAR contract.

105.    PAR and Wade Walters failed to abide by the Hospital's policies and procedures as required by Section 22.1 of the PAR contract.

106.    Due to the negligent and willful misconduct and/or omissions by PAR and Wade Walter's, the Hospital demands PAR and Wade Walter indemnify it per Section 9.1 of the PAR contract and reimburse all amounts the Hospital may owe to Medicare for overpayments caused at the insistence of PAR, Wade Walters, and its agents and/or employees.

107.    Because the Hospital is suing PAR and the other Defendants as a result of PAR's actions, the Hospital also demands attorneys' fees and expenses as required by Section 12.1 of the PAR contract.

108.    ProjX breached the requirements of its contract, attached hereto as Exhibit F, as it failed to comply with its obligations to oversee the construction at the Hospital and acted negligently in its oversight by allowing poor quality of construction and failing to ensure the plans and construction complied with all state and local regulations, requirements and standards concerning construction within the Hospital.

109.    Further, ProjX failed to evaluate the applications for payment in order to certify amounts due.  If such required action had been performed,

110.    If ProjX had appropriately performed its obligations under its contract, the Wellness project would not have to be redone or completed at this time.

111.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained or will incur losses and damages in an amount to be established at trial.

## COUNT FIVE
## ACTIONS WITHOUT CONTRACT/COMPLYING WITH STATE BID LAWS

112.    Plaintiff incorporates and adopts by reference each of the preceding paragraphs as fully set forth here.

113.    The Hospital is a community hospital and as such must comply with the rules regarding bidding for purchases over $5,000.00.

114.    Wade Walters, Hope Thomley, Mike Boleware and PierCon acted together in order to cause the Board to evade the public bidding law requirements.

115.    On information and belief, on the advice of Wade Walters and Hope Thomley, PierCon separated its invoices related to Hospital renovations so that each invoice would reflect a

19

number less than $5,000.00. Hope Thomley and Wade Walters presented to the Board that this was permissible under the bid law when in fact it was not.

116.    When taken together the total of these smaller invoices, all dated in September 2001, for Hospital renovation – not related to the Wellness project – was approximately $102,830.00. However, the renovation project was not put out for bid.

117.    Likewise, Wellness, PierCon and ProjX's agreements related to the Wellness room renovations were not bid as is required by Mississippi law.

118.    By evading the bid laws, on information and belief, Wade Walters, Hope Thomley and Mike Boleware were able to pay PierCon and the other Defendants with Hospital funds to which the Defendants were not entitled.

119.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained or will incur losses and damages in an amount to be established at trial.

<u>**COUNT SIX**</u>
<u>**CONVERSION**</u>

120.    Plaintiff incorporates and adopts by reference each of the preceding paragraphs as fully set forth here.

121.    Upon the termination of the PAR contract, on information and belief, Wade Walters and Hope Thomley instructed Grady Swann, the then current IT director to delete e-mails, documents and correspondence from the Hospital's computer system, thus intentionally depriving the Hospital of its property.

122.    This direction was done in an attempt to conceal all of the Defendants' fraud, negligent and wrongful actions, i.e. for their benefit, and in so doing, Defendants exercised the incidents of ownership over the Hospital's property.

123.    On information and belief, Grady Swann did in fact delete pertinent documents, emails and correspondence concerning the Defendants actions.

124.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained or will incur losses and damages in an amount to be established at trial.

## COUNT SEVEN
## NEGLIGENCE

125.    Plaintiff incorporates and adopts by reference each of the preceding paragraphs as fully set forth here.

126.    Wade Walters, Hope Thomley, PAR and Mike Boleware had a duty to advise the Hospital on accounts receivable procedures and reimbursement.

127.    The said Defendants breached their duty to the Board in order to increase their own profits.

128.    ProjX negligently oversaw the Wellness project at the Hospital, which led to increased damage both in having to redo work and damage to the structure of the Hospital.

129.    Kingbridge negligently advised the Board of Trustees regarding the reimbursement treatment of its finance arrangement by attempting to format its arrangement as a lease.

130.    Wellness Environments negligently advised the Board of Trustees not only of the quality of its so called equipment, but of the reimbursement treatment of its equipment and installation.

131.    PierCon negligently performed its construction work by not only failing to follow the plans prepared by ProjX, but also by damaging the Hospital structure.

132.    As a direct and proximate result of the Defendants' actions in breaching this duty, the Hospital was overpaid by Medicare.  As such, the Hospital has sustained or will incur losses and damages in an amount to be established at trial.

## COUNT EIGHT
## BREACH OF FIDUCIARY DUTY

133.    Plaintiff incorporates and adopts by reference each of the preceding paragraphs as fully set forth here.

134.    The Defendants, namely but not limited to, Hope Thomley, Wade Walters and Mike Boleware, breached their fiduciary duty to the Hospital to act in its best interests and provide advice and guidance in a professional and legal manner, having occupied a position of trust with regard to the Board, holding themselves out as experts in healthcare reimbursement and relevant state and federal laws, and the Board did in fact justifiably repose its trust in them. Further, as officers of the Hospital, one or more Defendants, owed the Hospital a fiduciary duty on that basis as well.

135.    As a direct and proximate result of Defendants' actions in breaching their fiduciary duty, Plaintiff has sustained or will incur losses and damages in an amount to be established at trial.

## COUNT NINE
## DECLARATORY ACTION

136.    Plaintiff incorporates and adopts by reference each of the preceding paragraphs as fully set forth here.

137.    As a result of the Defendants' manipulation of the Board, the Hospital's name was signed to numerous contracts, most of which were not spread upon the minutes of the Board, and were not approved by the Board and/or attached to the Board's minutes..

22

138.   As the agreements with PAR, Performance Capital Leasing, Wellness Environments, Kingsbridge, Stepping Stones, ProjX, and PierCon were never properly approved by the Board, the Hospital requests this Court to declare that the contracts are not enforceable against the Hospital pursuant to state law.

139.   Because the above-referenced contracts were not properly approved, all compensation paid pursuant to the illegal contracts should be returned to the Hospital, and this Court should so declare.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff sues and demands judgment of and from Defendants as follows:

a.   **Compensatory damages** in an amount exceeding the jurisdictional limits of this Court;

b.   **All fees** paid to PAR;

c.   **Reimbursement for any amounts** that are determined to be owed to any of the Defendants;

d.   **Punitive damages** against Defendants for willful and intentional actions taken in this matter in such amount as to be determined by this Court;

e.   **Reasonable attorneys' fees** in such amount as to be determined by this Court;

f.   **Costs and fees** incurred by Plaintiff in bringing this action and obtaining an adjudication on the damages available for the intentional or grossly negligent misconduct of Defendants as described herein;

g.   **Pre- and post-judgment interest** on all amounts owed in this action; and

h.   Such additional general or specific relief to which Plaintiff is entitled at law or in equity.

23

Respectfully submitted, this the 26th day of November, 2014.

PEARL RIVER COUNTY HOSPITAL

By: _____
        Thomas L. Kirkland, Jr.

OF COUNSEL:

Thomas L. Kirkland Jr., MSB No. 4181
Allison C. Simpson, MSB No. 101252
COPELAND, COOK, TAYLOR & BUSH, P.A.
600 Concourse, Suite 100
1076 Highland Colony Parkway
Ridgeland, Mississippi 39157
Telephone: (601) 856-7200
Facsimile: (601) 856-8242 ·

Claiborne "Buddy" McDonald IV, MSB No. 2388
Manya Creel Bryan, MSB No. 8672
MCDONALD, PATCH & BRYAN, PLLC
124 Kirkwood Street
Picayune, Mississippi 39466
Telephone: (601) 749-7488
Facsimile: (601) 749-7486·

24

## CERTIFICATE OF SERVICE

The undersigned counsel for Pearl River County Hospital does hereby certify that she has this day served a true and correct copy of Pearl River County Hospital's First Amended Complaint, via U.S mail, postage prepaid, to:

Robin L. Roberts, Esq.
ROBERTS & ASSOCIATES
Post Office Box 1953
Hattiesburg, Mississippi 39403
*Attorney for Dennis L. Pierce*

Rick Norton, Esq.
Joseph Tullos, Esq.
BRYAN NELSON, P.A.
P.O. Drawer 18109
Hattiesburg, Mississippi 39404-8109
*Attorneys for PierCon, Inc.*

William M. Quin, II, Esq.
William B. Bardwell, Esq.
Zachary M. Bonner, Esq.
MCCRANEY, MONTAGNET, QUIN & NOBLE
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
*Attorneys for Kingsbridge Holdings*

Carol Ann Estes Bustin, Esq.
BUSTIN LAW FIRM - HATTIESBURG
32 Office Park Drive
Hattiesburg, Mississippi 39402
*Attorney for Hope Thomley*

Dorsey R. Carson, Jr., Esq.
CARSON LAW GROUP PLLC
Capital Towers Suite 1336
125 S. Congress Street
Jackson, Mississippi 39201

Matthew J. DeVries, Esq.
STITES & HARBISON, PLLC
401 Commerce Street, Suite 800
Nashville, Tennessee 37219
*Attorneys for ProjX*

So certified, this the 26th November, 2014.

Dewitt L. Fortenberry, Jr., Esq.
Ashley C. Tullos, Esq.
BAKER, DONELSON
P. O. Box 14167
Jackson, Mississippi 39236
*Attorneys for Stepping Stones Healthcare*

J. Tucker Mitchell, Esq.
Stephen D. Stamboulieh, Esq.
MITCHELL DAY LAW FIRM, PLLC
618 Crescent Blvd., Suite 203
Ridgeland, Mississippi 39157
*Attorneys for Wellness, Inc.*

Lane B. Reed, Esq.
Mary Kathryn Williamson, Esq.
MCGEHEE, MCGEHEE & TORREY
P. O. Box 188
Meadville, Mississippi 39653-0188
*Attorneys for Mike Boleware*

Donald C. Dornan, Jr.
Lauren R. Hillery
DORNAN LAW OFFICE, PLLC
P.O. Box 117
Gulfport, MS 39502
*Attorneys for Defendant Colette Oldmixon*

Steve C. Thornton, Esq.
THORNTON LAW OFFICE
P.O. Box 16465
Jackson, Mississippi 39236
*Attorney for Wade Walters, Performance Capital Leasing, LLC & Performance Accounts Receivable, LLC*

Allison C. Simpson

25