UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**
ex. rel. **MITCHELL D. MONSOUR** and
**WALTON STEPHEN VAUGHAN (Relators)**     **PLAINTIFFS**

V.     Civil Action No. 1:16cv38HSO-JCG

**PERFORMANCE ACCOUNTS RECEIVABLE, LLC, et al.**     **DEFENDANTS**

### DECLARATION BY STEPHEN VAUGHAN

Walton Stephen Vaughan affirmed the following matters to be true, under penalty of perjury:

1. I am Walton Stephen ("Steve") Vaughan, an adult citizen of the United States, who serves as one of the two "Relators" in this case.

2. I earned a Masters Degree in Hospital and Health Administration from the University of Alabama at Birmingham, after earning a Bachelor of Science degree from Florida State University.

3. I have served for many years as an executive and administrator in over ten different health care facilities, including two different hospitals. I have never had a job as a fraud or compliance investigator, and have never had a job in which it was my duty to my employer to file reports with or make findings directly to any government

1

agency about evidence or findings of fraud or Medicare non-compliance without my employer's review and instruction. I have managed to oversee the health care operations for which I have been employed through methods and practices which I believe comply with relevant health care laws as I understand them.

4. Beginning in 2012, and until resigning in 2017, I served as the Chief Executive Officer and Administrator of the Pearl River County Hospital & Nursing Home ("PRCH") in Poplarville, Mississippi.

5. Shortly after assuming that responsibility at PRCH in 2012, I began personally to analyze contracts which PRCH had previously entered with private consultants, vendors, and health care providers. I determined during 2012, as a result of my own review of those documents as a part of my own job responsibilities as PRCH CEO, that the terms and implementation of a "consulting" contract which PRCH had entered with Wade Walters, of Hattiesburg, Mississippi, was resulting in PRCH incurring and paying for many costs and expenses which were not properly or legally related to patient care, and thus were not properly allowable as health care costs to be included on any Medicare cost report. As I knew from my experience, their inclusion in the PRCH cost reports had increased the amounts of the per diem, per patient payments by which Medicare pays "Critical Access Hospitals" such as PRCH. I also determined through my

own initiative in 2012 that the driving force of those excessive costs and payments was a contract under which Walters was promised a significant percent of all revenues received by PRCH from Medicare and other payors, in exchange for recommending vendors and service providers to PRCH.

6. In order to further assess the propriety of such contracts and what should be done about them, I engaged Mitchell Monsour, the other Relator in this case, as a consultant for PRCH, because of Monsour's extensive experience in the proper administration of Critical Access Hospital facilities, especially in Mississippi. Monsour's experience had included direct experience with a contract between the North Sunflower Medical Center and a company owned by Wade Walters, in which Walters was similarly promised a fraction of all of that Hospital's revenue as a Critical Access Hospital. I also learned that my predecessor at PRCH, Mike Boleware, had become administrator at the Franklin County Memorial Hospital in Meadville, Mississippi, which we learned had also entered a very similar contingency-style contract with Walters (who also had recruited and recommended to that Hospital vendors and providers which he had recommended to other hospitals, including PRCH). Mr. Monsour was also familiar from his experience with the other Critical Access Hospitals with whom Wade Walters, or entities owned by Walters, had entered and operated such contingency-style contracts. Through our own

efforts, Mr. Monsour and I during 2012 had learned of the facts which ended up being included in the Complaint through which we have filed this False Claims Act action.

7.  Beginning in late 2012, Mitchell Monsour, acting under my authority and at my direction as CEO of his client, PRCH Hospital, began to provide notice to the Office of the Inspector General ("OIG") of the U. S. Department of Health and Human Services, and to Medicare payment contractors and Mississippi Medicaid officials, of the activity by Wade Walters of the kind I have described above. While it took a great deal of time to actually obtain meetings with federal health care fraud officials, Mr. Monsour and I met with OIG Special Agent Lynn McLear on February 9, 2015, to further explain our evidence concerning Mr. Walters' dealings with his various Critical Access Hospital clients, which was basically the evidence we included in the False Claims Act complaint.

8.  Also by the end of 2012, and on the recommendation of Mitchell Monsour, I engaged, on behalf of PRCH Hospital, Jackson-area attorney Tom Kirkland and the law firm of Copeland, Cook, Taylor and Bush, to represent PRCH in the defense of a civil case brought against PRCH by Wade Walters and his companies, and also to attempt to recover from Walters and others, on behalf of PRCH, costs

improperly paid by PRCH because of conduct by Walters and companies he had recommended for payments by PRCH. Along with Mr. Monsour, before that State Court lawsuit was filed, I explained to Mr. Kirkland the documents and analysis which I determined, based on my own analysis of documents and that of Mr. Monsour, justified such a litigation effort.

9. All of the activity by Kirkland and that firm which resulted in that litigation, named *Pearl River County Hospital v. Wade Walters, et al.*, (Cause No. 2013-0203M), was conducted under my general supervision and approval as the CEO of Mr. Kirkland's client, the PRCH. I have recently reviewed correspondence from Mr. Kirkland on behalf of PRCH to the U. S. Attorney's Office dated December 9, 2013, and December 15, 2014, which I understand Mr. Walters' attorneys have included as exhibits to a recent filing in this *qui tam* case. Those letters were sent to that office under my authority, as part of the effort, undertaken by my own decision, to notify federal and state officials of such conduct by Mr. Walters that I had discovered prior to the filing of that State Court lawsuit.

10. I also decided, after consultation and a recommendation by Mitchell Monsour, for the accounting firm of BKD, LLC to be engaged to conduct a forensic audit of some of the transactions among Wade Walters' companies, service providers recommended to PRCH by Walters, and the PRCH Hospital itself. As a result of audit

findings by that BKD firm, Medicare auditors were asked to re-open an earlier Adesk audit@ of a cost report submitted by PRCH prior to my tenure.

11. All of my efforts as described above to provide information to federal and state officials about illegal activities by Mr. Walters and his companies, like the efforts of Mr. Monsour to provide the same information, were undertaken completely voluntarily, completely at our initiative, and completely out of concern for obedience to the law as taxpayers and as health care management professional.

12. The facts stated above are true to my personal knowledge.

This the ___ day of February, 2018.

_____
Walton Stephen Vaughan