IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES *ex rel.* MITCHELL              RELATORS
D. MONSOUR and WALTON
STEPHEN VAUGHAN

v.                                   Civil No. 1:16cv38-HSO-JCG

PERFORMANCE ACCOUNTS           DEFENDANTS
RECEIVABLE, LLC, et al.


**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT HOPE THOMLEY'S MOTION [36] TO
DISMISS; GRANTING IN PART AND DENYING IN PART DEFENDANTS
PERFORMANCE ACCOUNTS RECEIVABLE, LLC, PERFORMANCE
CAPITAL LEASING, LLC, AND WADE WALTERS' MOTION [44] TO
DISMISS AND MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS STEPPING STONES
HEALTHCARE, LLC, AND CLAYTON DEARDORFF'S MOTION [65] TO
DISMISS AND MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT are the following motions: (1) the Motion [36] to

Dismiss filed by Defendant Hope Thomley ("Thomley"); (2) the Motion [44] to

Dismiss and Motion for Summary Judgment filed by Defendants Performance

Accounts Receivable, LLC ("Performance Accounts"), Performance Capital Leasing,

LLC ("Performance Leasing"), and Wade Walters (collectively, "Walters

Defendants"); and (3) the Motion [65] to Dismiss and Motion for Summary

Judgment filed by Defendants Stepping Stones Healthcare, LLC and Clayton

Deardorff (collectively, "Stepping Stones Defendants"). These Motions are fully

briefed.

Based upon its review of the record and relevant legal authority, the Court

finds that Defendants' Motions [36] [44] [65] should all be granted in part and denied in part. Relators' claims against Thomley, the Walters Defendants, and the Stepping Stones Defendants for conduct occurring before March 23, 2010, will be dismissed with prejudice, but without prejudice to any such claims by the United States. Relators' remaining claims against these Defendants for conduct occurring after March 23, 2010, will proceed.

## I. BACKGROUND

A.    Procedural history

From 2012 to 2017, Relator Walton Stephen Vaughan ("Vaughan") served as Chief Executive Officer and Administrator of the Pearl River County Hospital ("PRCH") in Poplarville, Mississippi. Vaughan Aff. [69-1] ¶4; Compl. [3] ¶ 2. In 2012, Relator Mitchell Monsour ("Monsour") worked for PRCH as a consultant. Compl. [3] ¶ 3.

On February 8, 2016, Vaughan and Monsour, acting as Relators on behalf of the United States, filed a Complaint under the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq*, against North Sunflower Medical Center, Franklin County Memorial Hospital, Tallahatchie General Hospital, the Walters Defendants, Stepping Stones, Deardorff, Wellness Environments, Inc., Mike Boleware, Hope Thomley, Dennis L. Pierce, and Piercon, Inc. Compl. [3] at 1. Defendants North Sunflower Medical Center, Franklin County Memorial Hospital, and Tallahatchie General Hospital (collectively, "Hospital Defendants") are county-owned hospitals in Mississippi. *Id.* ¶¶ 5-7. Defendant Wade Walters ("Walters") owns and operates Performance

Accounts and Performance Leasing, which are management companies that contract with hospitals and other health care entities. *Id.* ¶¶ 8-9, 12. Defendant Hope Thomley was an employee of Performance Accounts. *Id.* ¶¶ 15, 65. Defendant Clayton Deardorff ("Deardorff") owns and operates Stepping Stones. *Id.* ¶ 10. Defendant Dennis Pierce ("Pierce") owned and controlled Defendant Piercon, Inc. ("Piercon"), a construction company. *Id.* ¶¶ 16-17.

Relators claim that payments made by the Hospital Defendants to the Walters Defendants and to Stepping Stones constituted remuneration in return for arranging for and recommending services and expenditures, in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b ("AKS"). *Id.* ¶ 66. The Complaint alleges that the Walters Defendants and Stepping Stones caused increased costs to the Hospital Defendants and ultimately Medicare, which resulted from violations of the AKS, and in turn rendered the Hospital Defendants' Medicare cost reports to be false and in violation of the FCA. *Id.* ¶¶ 67, 69. Relators assert that the Hospital Defendants' cost reports falsely represented that such costs were directly related and necessary to patient health care when they were not, in violation of the FCA. *Id.* ¶¶ 43, 70.

Count I of the Complaint asserts a violation of the FCA against Defendants for making, or causing to be made, false claims for payment to the Government. *Id.* at 26-27; *see* 31 U.S.C. § 3729(a)(1)(A). Count II alleges that Defendants caused false records or statements to be made to get false claims paid by the Government, in violation of the FCA. Compl. [3] at 28-29; *see* 31 U.S.C. § 3729(a)(1)(B).

Finally, Count III advances a claim against Defendants for conspiracy to violate the FCA. Compl. [3] at 19; *see* 31 U.S.C. § 3729(a)(1)(C).

On July 19, 2017, the United States notified the Court that it was declining to intervene as of that time because its investigation had not been completed and it was not able to decide whether to pursue the case. Notice [13]. On September 27, 2017, Relators filed a Notice of Voluntary Dismissal, dismissing Defendants North Sunflower Medical Center, Franklin County Memorial Hospital, Tallahatchie General Hospital, and Wellness. Notice of Dismissal [15]. Relators have since voluntarily dismissed their claims against Defendant Boleware, Supp. Notice of Dismissal [41], and Defendants Pierce and Piercon, Third Notice of Dismissal [67]. Only the Walters Defendants, Deardorff, Stepping Stones, and Thomley remain as Defendants.

B.   Defendants' alleged cost-padding scheme

The federal Medicare program designates approximately 1,200 to 1,400 small hospitals in the United States as "Critical Access Hospitals" or "CAHs." Compl. [3] ¶ 27. CAHs operate in rural, economically deprived, and medically underserved areas. *Id.* According to the Complaint, Medicare pays CAHs based on each hospital's reported and allowable costs, *id.* ¶ 28, and each CAH receives 101% of its allowable costs for services, *id.* The more costs claimed by CAHs on their Medicare cost reports, the more Medicare money they receive, *id.,* and Medicare does not set a particular monetary ceiling on CAH costs, *id.* ¶ 33. Each of the Hospital Defendants in this case was designated a CAH, *id.* ¶ 42, and as part of their

participation in the Medicare program, each Hospital Defendant certified its understanding that payment of a claim by Medicare was conditioned upon the claim complying with Medicare laws and regulations, including the federal anti-kickback statute ("AKS"), 42 U.S.C. § 1320a-7b(b), Compl. [3] ¶ 23.

Relators' Complaint alleges that beginning in 2005, Walters and the Hospital Defendants engaged in a "cost-padding scheme" in which they fraudulently exploited the cost-based system of Medicare reimbursements to CAHs by inflating costs. *Id.* ¶ 43. Specifically, the Hospital Defendants submitted cost reports to Medicare that falsely represented that certain costs were directly related and necessary to patient care, when the central purpose and effect of the inflated costs was to enrich Walters and all Defendants other than the Hospital Defendants. *Id.*

To advance this scheme, Defendant Performance Accounts contracted with the Hospital Defendants to create higher costs and thus generate higher Medicare revenues. *Id.* ¶ 44. Specifically, the Hospital Defendants engaged Walters to restructure the hospitals' operations to allow for maximum cost-based reimbursement, *id.* ¶ 45, committed to pay Walters to develop new services and referral sources that would increase revenue, *id.* ¶ 46, and agreed to give Walters and Performance Accounts substantial control over the hiring of vendors and service providers to increase costs, *id.* ¶ 47. Walters in turn recruited and caused the Hospital Defendants to enter into purported service contracts with other entities that would be paid by the Hospital Defendants based on how much those other vendors succeeded in increasing the reported costs and thus Medicare

revenues.  *Id.* ¶ 52.

By way of example, in 2010, PRCH entered into an agreement with Performance Accounts wherein PRCH paid Performance Accounts 7% of all revenue received by PRCH.  *Id.* ¶ 49.  Walters also recruited and caused the Hospital Defendants to enter into agreements with Stepping Stones.  *Id.* ¶¶ 52-53. Pursuant to these agreements, Stepping Stones was engaged by the Hospital Defendants to develop substantial increased costs and thus higher Medicare revenue from the hospitals' operation of geriatric intensive outpatient psychological therapy programs ("IOPs").  *Id.*

Beginning in April 2011, PRCH agreed to pay Stepping Stones a percentage of total Medicare gross revenues it received from any IOP operation.  *Id.* ¶ 54. The percentage Stepping Stones received increased as the gross revenue from IOP operations increased.  *Id.*  The agreements with Stepping Stones obligated the staff of the Hospital Defendants, and not Stepping Stones, to be the exclusive providers of IOP services delivered to Medicare patients.  *Id.* ¶ 55.  Relators allege that these agreements were not intended to compensate Stepping Stones for the value of services directly related to patient care, but instead were designed to increase reported costs and Medicare payments.  *Id.*  Deardorff allegedly agreed in 2011 with Walters that if IOP revenues reached a certain amount, Deardorff would make a large donation to the PRCH Foundation with part of the proceeds from his compensation.  *Id.* ¶ 61.

Defendants Pierce and Piercon agreed to conduct construction projects for

PRCH, and allegedly agreed to charge exorbitant prices and then split the invoices for such work into multiple invoices of less than $5,000.00 in order to allow Walters to evade a Medicare requirement that construction expenditures over $5,000.00 be treated as a capital project subject to depreciation. *Id.* ¶ 59. Next, Relators claim that Defendant Wellness Environments, Inc. ("Wellness"), sold to the Hospital Defendants construction materials at exorbitant, non-competitive prices arranged for by Walters in order to increase costs. *Id.* ¶ 60. Wellness then paid PRCH $20,000.00 in exchange for Wellness being awarded the contract to supply modular room walls and structures at PRCH, *id.* ¶ 62, and Walters caused Performance Leasing to lease to the Hospital Defendants modular buildings, medical equipment, and properties at exorbitant leasing rates designed to increase the hospitals' costs, *id.* ¶ 68.

The Complaint asserts that Defendant Hope Thomley agreed with Walters to use her position as an employee of Performance Accounts to cause PRCH to incur additional expenses and enter into multiple contracts, none of which were related to the delivery of health care services. *Id.* ¶ 65. These transactions included payments by PRCH to Thomley of a salary apart from her Performance Accounts salary, the purchase by PRCH of insurance policies for which Thomley's husband was the commission-paid insurance agent, purchases of approximately $2,000.00 in Christmas decorations in November 2011 from a company owned by Thomley's husband, payments of over $6,000.00 to a company formed by Thomley and her husband for purported services including information technology consulting, and

payments of Thomley's personal expenses charged on her credit card.    *Id.*

Relators allege that beginning in 2012, they uncovered Defendants' alleged conduct and engaged auditors and attorneys to learn more details.    *Id.* ¶ 3. Relators contend that they disclosed Defendants' activities to federal health care fraud officials, including the U.S. Department of Health and Human Services and Medicare.    *Id.*

C.    PRCH state court litigation

On November 1, 2013, PRCH filed a Complaint in the Circuit Court of Pearl River County, Mississippi, against the Walters Defendants, Stepping Stones, Wellness, Piercon, and other defendants.    PRCH Compl. [65-1].    PRCH's Complaint advanced claims for "actions to defraud the hospital and Medicare," "civil conspiracy to take over operations of hospital for defendants' benefit," fraudulent misrepresentation to the board of trustees, breach of contract, violating state bid laws, conversion, negligence, and breach of fiduciary duty.    *Id.* at 11-18.

On January 20, 2016, PRCH settled its claims against Piercon, and the state court dismissed those claims with prejudice.    Piercon Dismissal Order [32-2].    On May 2, 2017, PRCH and the Walters Defendants reached a settlement, Settlement Order [45-9] at 2, and agreed that upon receipt of the settlement payment, PRCH and the Walters Defendants "shall dismiss with prejudice all claims against one another,"    *id.*    The Pearl River County Circuit Court entered an Agreed Order of Dismissal on June 5, 2017, noting that PRCH and the Walters Defendants had settled their claims, and dismissed with prejudice "any and all claims" raised by

PRCH against the Walters Defendants. Walters Defendants Dismissal Order [45-10]. Also on June 5, 2017, the circuit court dismissed PRCH's claims against Thomley with prejudice after the parties settled.[1] Thomley Dismissal Order [36-1].

D. Defendants' motions to dismiss in the present case

1. Defendant Thomley's Motion to Dismiss

Thomley has filed a Motion [36] to Dismiss in this case, contending that Relators fail to state a claim against her and that the Complaint fails to plead an FCA violation with particularity as required by Federal Rule of Civil Procedure 9(b). Def.'s Mot. [36] at 2. Thomley also argues that Relators are not original sources of the information in their Complaint as against Thomley, as these allegations became public information during the PRCH lawsuit. *Id.* at 3. Lastly, Thomley maintains that Relators' action is barred by the doctrines of res judicata and collateral estoppel, as PRCH dismissed its claims against her in the state court litigation. *Id.* at 3-4.

Relators respond that Thomley ignores many of the allegations against her in the Complaint and that she offers no legal support for asserting the allegations fail under Rule 12(b)(6). Pls.' Resp. [47] at 1. According to Relators, their particular allegations against her, that she knew of and agreed to participate to her financial benefit in the alleged cost-padding scheme, proximately caused the submission of false claims, and this is sufficient to satisfy the requirements of both Rule 9(b) and Rule 12(b)(6). *Id.* at 3-5. Relators assert that Thomley incorrectly relies on the

---

[1] Neither Stepping Stones nor Relators have indicated whether PRCH is still pursuing its claims against Stepping Stones in state court.

PRCH state court litigation, because under the current version of the FCA, state proceedings do not constitute public disclosures. *Id.* at 9. Alternatively, Relators argue that they are original sources of the information because they had the information before, disclosed the information prior to, and initiated the state court suit. *Id.* at 10.

Relators also contend that Thomley's assertion that the FCA complaint is barred by res judicata is conclusory and that the doctrine is not applicable because they were not parties to the state court suit, the state court settlement was not an adjudication on the merits, and no cause of action under the FCA was raised in the state case. *Id.* at 11-12. Finally, Relators maintain that their claims are not barred by collateral estoppel because they were not parties to the state court litigation and no issue material to their FCA complaint was litigated on the merits. *Id.* at 13-14.

    2.   <u>The Walters Defendants' Motion to Dismiss</u>

On December 28, 2017, the Walters Defendants filed a Motion [44] to Dismiss and Motion for Summary Judgment. The Walters Defendants first contend that the FCA's public disclosure bar precludes Relators from bringing their Complaint because it is based on allegations that were publicly disclosed in the PRCH lawsuit, in an *in rem* action brought by the United States, and in the news media. Defs.' Mem. [45] at 7-11. They also maintain that Relators are not an original source of the information upon which their allegations are based because they did not work at PRCH during the time when the allegedly fraudulent conduct occurred, and the information they obtained was derived second-hand. *Id.* at 11.

The Walters Defendants also contend that Relators' Complaint should be dismissed because it fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, fails to comply with Rule 9(b)'s heightened pleading standard, and fails to plead special damages under Rule 9(g). Defs.' Mem. [45] at 16-18. Lastly, the Walters Defendants maintain that, based upon the doctrines of res judicata and accord and satisfaction, Relators' case is precluded by the dismissal of the Walters Defendants from the PRCH state court lawsuit. *Id.* at 20-21.

Relators respond that the Walters Defendants' reliance on the PRCH lawsuit as a public disclosure is misplaced because, after Congress amended the FCA in 2010, a disclosure in a state court proceeding or any proceeding in which the Government is not a party no longer can serve as a "public disclosure" so as to preclude a *qui tam* action. Pls.' Resp. [51] at 4. Relators further assert that none of the allegations in the *in rem* proceeding or in news reports disclose any of the information alleged by Relators in this case. *Id.* at 3, 6. Relators argue, in the alternative, that they are original sources of the information because they initiated the PRCH lawsuit and uncovered the facts supporting their allegations through their own efforts. *Id.* at 7-8.

Relators next contend that the Walters Defendants offer no legal analysis or argument in support of their position that the Complaint should be dismissed under Federal Rules of Civil Procedure 9(b) or 12(b)(6). Pls.' Resp. [51] at 8, 12. According to Relators, res judicata and accord and satisfaction do not apply because Relators and the United States were not parties to the PRCH lawsuit, the dismissal

of claims against the Walters Defendants in the PRCH suit was the result of a settlement and thus not an adjudication on the merits, and no cause of action under the FCA was raised in that case. *Id.* at 14-15.

The Walters Defendants raise two additional alleged public disclosures in their Reply– Medicare audits and reports of PRCH's cost reports and letters to the United States Attorney's Office – to argue that Relators' Complaint is based upon these disclosures. Reply [54] at 6-7.

     3.    <u>Stepping Stones and Deardorff's Motion to Dismiss</u>

Stepping Stones and Deardorff have filed their own Motion [65] to Dismiss and Motion for Summary Judgment. Raising arguments similar to those advanced by the Walters Defendants, Stepping Stones and Deardorff contend that Relators' Complaint is barred by the FCA's public disclosure bar, Defs.' Mem. [66] at 15-22, and that Relators do not qualify as original sources because they do not allege that they worked at any of the Hospital Defendants other than PRCH, *id.* at 20-21.

Stepping Stones and Deardorff also seek dismissal under Federal Rule of Civil Procedure 12(b)(6), contending that the Complaint fails to allege that these Defendants knowingly caused the presentation of false claims or the making of false records, *id.* at 5, and noting that the Complaint does not allege that Stepping Stones presented any false claim to Medicare or made a false record material to a Medicare payment, *id.* at 6. To the extent Relators assert that Stepping Stones and Deardorff indirectly caused the Hospital Defendants to present false claims and make false records, they posit that Relators do not allege that Stepping Stones or

Deardorff played any role in making or presenting Defendant Hospitals' allegedly false claims or records. *Id.* at 7. Stepping Stones and Deardorff also contend that Relators fail to allege that Stepping Stones or Deardorff violated the AKS, as the Complaint does not claim that Stepping Stones or Deardorff received remuneration in exchange for referring any patient to any of the Hospital Defendants. *Id.* at 8-9.

Stepping Stones and Deardorff next argue that the Complaint fails to plead fraud with particularity because it does not specify which Medicare payment requests by which hospitals were allegedly tainted by kickbacks, or how Stepping Stones purportedly had any role in the preparation and submission of Medicare cost reports. *Id.* at 12. Lastly, these Defendants maintain that the claim for conspiracy must be dismissed as against them because the Complaint does not allege with particularity any agreement Stepping Stones or Deardorff entered into to get false claims paid by Medicare, or any overt act in furtherance of such an agreement. *Id.* at 15.

Relators respond that the Complaint does allege that Stepping Stones violated the AKS when it agreed with Franklin County Memorial Hospital and PRCH to develop IOPs to increase costs and thus Medicare revenues, with Stepping Stones to be paid by the hospitals according to how much of an increase in gross charges Stepping Stones could arrange for the hospitals. Pls. Resp. [69] at 3. Relators contend that the Complaint satisfies Rule 9(b)'s heightened pleading standard because it sets out the particular workings of Stepping Stones' scheme to fraudulently exploit the cost-based system of Medicare reimbursement for CAHs.

*Id.* at 8.   Finally, Relators assert that Stepping Stones and Deardorff became liable for conspiracy by agreeing to participate in Defendants' cost-padding scheme.   *Id.* at 9.

## II. DISCUSSION

### A.   Applicable legal standards

#### 1.   Motions to dismiss

When presented with a motion to dismiss pursuant to Rule 12(b)(6), a court "must assess whether the complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face[.]"   *Spitzberg v. Houston Am. Energy Corp.,* 758 F.3d 676, 683 (5th Cir. 2014) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).   A court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff.   *Varela v. Gonzales,* 773 F.3d 704, 707 (5th Cir. 2014) (citation omitted).   This tenet, however, is inapplicable to legal conclusions. *Id.* (citation omitted).

Because claims brought under the FCA are fraud claims, they must also comply with the supplemental pleading requirements of Rule 9(b), which require a party to "state with particularity the circumstances constituting fraud."   FED. R. CIV. P. 9(b); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 189-90 (5th Cir. 2009).   Although traditionally a fraud complaint must include "the time, place and contents of the false representation[ ], as well as the identity of the person making the misrepresentation, and what that person obtained thereby," *United*

States ex rel. Russell v. Epic Healthcare Mgmt. Grp., 193 F.3d 304, 308 (5th Cir. 1999), Rule 9(b) is "context specific and flexible," *Grubbs*, 565 F.3d at 190. If a complaint "cannot allege the details of an actually submitted false claim, [it] may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190.

2.   Motions for summary judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249 (1986)).   In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

B.   Analysis of Defendants' arguments for dismissal

1.   The False Claims Act's public disclosure bar

The FCA imposes civil liability and treble damages on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States Government; or "knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim."   31 U.S.C. § 3729(a)(1)(A)-(B).   The FCA's *qui tam* enforcement provision allows a private party, known as a "relator," to bring an FCA action on behalf of the United States.   *Id.* § 3730(b)(1).

Such *qui tam* suits are subject to the FCA's public disclosure bar.   The Complaint in this case alleges conduct which occurred both before and after 2010. The public disclosure bar in the 2005 version of the FCA provided:

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

*Id.* § 3730(e)(4) (2005).

Prior to 2010, this public disclosure provision operated as a jurisdictional bar, "depriv[ing] the district court of jurisdiction whenever *qui tam* relators bring a suit based on publically available information." *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 324 (5th Cir. 2011).

In 2010, an amendment to the FCA "replace[d] the prior version of 31 U.S.C. § 3730(e)(4) with new language." *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 n.1 (2010). 31 U.S.C. § 3730(e)(4) now states:

> (A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed-
>
>> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>>
>> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>>
>> (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

*Id.* § 3730(e)(4) (2010).

The 2010 amendments to the FCA removed the language explicitly stating that a court was deprived of "jurisdiction" over the action if the public disclosure bar applied, reduced the number of enumerated public disclosure sources, and expanded the definition of an "original source." Although under the 2010 amendments, the public disclosure bar is no longer jurisdictional, *Abbott v. BP Exploration & Prod., Inc.*, 851 F.3d 384, 387 n.2 (5th Cir. 2017), the United States Supreme Court has stated that the 2010 amendments to the public disclosure bar do not apply retroactively, *Graham Cty.*, 559 U.S. at 283 n.1.

Relators' Complaint alleges wrongful conduct on the part of Defendants which stretched from 2005 to 2011. Compl. [3] ¶¶ 15, 54. With respect to Thomley, the Complaint does not provide specific dates for her alleged conduct. In a case such as this one, where the alleged conduct occurred before and after March 23, 2010, a court is to bifurcate its public disclosure analysis and apply the pre-2010 version of the FCA to conduct occurring prior to March 23, 2010, and the post-2010 version to conduct occurring on or after March 23, 2010. *See United States ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 143-44 (5th Cir. 2017) (applying the pre-2010 version of the FCA to claims filed in 2012 but arising from conduct that occurred before 2010); *see also Graham Cty.*, 559 U.S. at 283 n.1 (declining to apply the post-2010 version of the public disclosure bar to case pending before 2010); *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) ("The principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human

appeal.").

2. <u>Relators' pre-2010 claims and the public disclosure bar</u>

Under the pre-2010 version of the FCA, a "challenge under the FCA

jurisdictional bar is necessarily intertwined with the merits and is, therefore,

properly treated as a motion for summary judgment." *Jamison*, 649 F.3d at 326

(citation and quotation marks omitted). The Fifth Circuit employs a three-part

test to apply the pre-2010 version of 31 U.S.C. § 3730(e)(4), asking: "1) whether

there has been a 'public disclosure' of allegations or transactions, 2) whether the qui

tam action is 'based upon' such publicly disclosed allegations, and 3) if so, whether

the relator is the 'original source' of the information." *Fed. Recovery Servs., Inc. v.

United States*, 72 F.3d 447, 450 (5th Cir. 1995).

A defendant's burden of proof on a motion raising the public disclosure bar

requires that the defendant "must first point to documents plausibly containing

allegations or transactions on which [the relator's] complaint is based." *Jamison*,

649 F.3d at 327. If a defendant carries this burden, "the relator must then produce

evidence 'to show that there is a genuine issue of material fact as to whether this

action was based on those disclosures' or that he is an original source." *United

States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 373 (5th Cir. 2017) (quoting

*Jamison*, 649 F.3d at 327). With the foregoing in mind, the Court now turns to the

specific facts of this case.

a. <u>Whether there was a public disclosure</u>

The first step in the analysis is whether there has been an enumerated

"public disclosure" of the pertinent allegations or transactions.   Here, Defendants have submitted a wide range of documents which they contend constituted public disclosures, such as court filings, news reports, communications with the Government, audits, and reports.   *In Rem* Compl. [45-6]; CMS Report [54-3]; Dec. 9, 2013 PRCH Letter [54-10]; PRCH First Am. Compl. [54-14]; Picayune Item Article [65-3].

The former version of the FCA provided that allegations "in a criminal, civil, or administrative hearing" qualified as public disclosures.   31 U.S.C. § 3730(e)(4)(A) (2005).   "Any information disclosed through civil litigation and on file with the clerk's office should be considered a public disclosure of allegations in a civil hearing for purposes of section 3730(e)(4)(A)."   *Fed. Recovery Servs.*, 72 F.3d at 450 (citation omitted).   "This includes civil complaints."   *Id.*   Defendants Stepping Stones and Deardorff point to the Complaint filed in the Circuit Court of Pearl River County, Mississippi, on November 1, 2013, by PRCH against the Walters Defendants, Stepping Stones, and other defendants, as a public disclosure. PRCH Compl. [65-1] at 1.   The Walters Defendants also draw attention to the First Amended Complaint filed in that case on November 26, 2014, PRCH First Am. Compl. [54-14], and highlight an *In Rem* Complaint filed by the United States in this district on January 20, 2016, *In Rem* Compl. [45-6].   These pleadings constitute public disclosures in a civil hearing under the pre-2010 version of the FCA.

Information released in "news media" was also a public disclosure under the

pre-2010 FCA. 31 U.S.C. § 3730(e)(4)(A) (2005). Stepping Stones has submitted an internet news report from the Picayune Item newspaper dated November 9, 2013, and another online news report from Pharmacy Choice published on December 5, 2013. Picayune Item Article [65-3]; Pharmacy Choice Article [65-4]. These articles stated that PRCH filed a lawsuit claiming Defendants defrauded the hospital and Medicare. Under the pre-amendment FCA, these reports qualified as public disclosures "from the news media."

Lastly, allegations "in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation" were public disclosures under the pre-2010 FCA. 31 U.S.C. § 3730(e)(4)(A) (2005). The Walters Defendants assert that the United States Attorney's Office investigated the PRCH case and the allegations which form the basis of Relators' present Complaint. Reply [54] at 7. In support of this assertion, the Walters Defendants refer to two letters sent by PRCH's litigation counsel to the United States Attorney's Office, one on December 9, 2013, and a second on December 15, 2014, and argue that this correspondence amounted to "public disclosures" through a federal report or investigation. Reply [54] at 8.

Specifically, on December 9, 2013, PRCH's litigation counsel in the state court case wrote to an Assistant United States Attorney ("AUSA") to disclose the alleged fraud that PRCH had uncovered and that it was at issue in the PRCH litigation. Dec. 9, 2013 PRCH Letter [54-10] at 1. This letter discussed in detail the purported fraud committed by Boleware, Walters, and Thomley. *Id.* at 1-2.

On December 15, 2014, PRCH's counsel sent another letter. Dec. 15, 2014 PRCH Letter [54-11] at 1. In it, PRCH's counsel mentioned a meeting with the AUSA in the previous year "concerning the Hospital's determination" that Defendants may have filed non-reimbursable Medicare costs. *Id.* The Walters Defendants have not pointed to any record evidence to indicate that these letters were sent as part of a federal investigation, and they do not reveal whether the AUSA ever took any investigative action in response. Without more, it cannot be said that such *sua sponte* disclosures to the Government, by themselves, constituted an investigation. The Walters Defendants have not adequately shown that these letters qualified as public disclosures under the pre-2010 FCA.

The Walters Defendants also assert that Medicare investigated and audited the claims Relators now raise. Reply [54] at 6. In support of this position, Defendants point to several communications from Medicare: 1) a Medicare Report stating that Medicare had reviewed PRCH's cost report, CMS Report [54-3]; 2) a subsequent letter to Vaughan on April 28, 2015, stating that Medicare would reopen the cost report into PRCH for the fiscal year ending on September 30, 2011, CMS Letter to Vaughan [54-7]; and 3) a Notice of Correction of Program Reimbursement issued by CMS on September 29, 2015, after review of PRCH's cost report, CMS Notice [54-8]. These items from Medicare constituted administrative reports under the pre-2010 FCA, and were thus public disclosures.

> b. <u>Whether Relators' Complaint is based upon the public disclosures</u>

The next step in evaluating the applicability of the public disclosure bar

under the pre-2010 FCA is to determine whether the present action is based upon such publicly disclosed allegations. "A plaintiff's FCA complaint is based upon public disclosures if 'one could have produced the substance of the complaint merely by synthesizing the public disclosures' description of the joint venture scheme.'" *United States ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 144 (5th Cir. 2017) (quoting *Jamison*, 649 F.3d at 331). "The public disclosures must therefore provide specific details about the fraudulent scheme and the types of actors involved in it sufficient to set the government on the trail of the fraud." *Id.* (citations and quotation marks omitted). "[S]ources such as a restatement of the applicable law and general statements that a type of fraud is proliferating [are] inadequate to trigger the disclosure bar on their own." *Little v. Shell Expl. & Prod. Co.*, 690 F.3d 282, 293 (5th Cir. 2012) (quotation marks and citations omitted).

The Fifth Circuit has adopted a test "for determining whether public disclosures contain sufficient indicia of an FCA violation to bar a subsequently filed FCA complaint." *Solomon*, 878 F.3d at 144. Under this approach, the required elements for the inference of fraud – "a misrepresented state of facts *and* a true state of facts" – must be revealed in the public domain. *Id.* (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 655 (D.C. Cir. 1994)) (emphasis in original). "The presence of one or the other in the public domain, but not both, cannot be expected to set government investigators on the trail of fraud." *Id.* (quoting *Springfield Terminal*, 14 F.3d at 655).

The Picayune Item news article submitted by Stepping Stones as Exhibit 3 to

its Motion stated that PRCH filed a lawsuit "against 12 defendants that claimed the defendants defrauded the hospital and Medicare." Picayune Item Article [65-3] at 1. The article offered no specific details about the scheme to defraud the Government, and only contained a general statement that the defendants defrauded Medicare. This is insufficient to trigger the public disclosure bar. The Pharmacy Choice article suffered the same deficiencies, as it merely reported that PRCH had filed a complaint against Boleware, Thomley, Performance Accounts, Performance Leasing, and Stepping Stones, and that PRCH claimed "the defendants' actions defrauded the hospital and Medicare." Pharmacy Choice Article [65-4]. Defendants have not shown that Relators' Complaint is based upon the allegations in the news media reports.

Similarly insufficient is the *In Rem* Complaint. The *In Rem* Complaint sought to seize and forfeit property, but did not identify who owned the property or set forth the factual circumstances giving rise to the forfeiture. The *In Rem* Complaint claimed that the property was involved in a violation of 18 U.S.C. §§ 1956 and 1347, *In Rem* Compl. [45-6] at 2, and though § 1347 criminalizes health care fraud, invoking the statute was merely a restatement of the applicable law and a general claim that fraud had occurred, which is insufficient to trigger the public disclosure bar, *Little*, 690 F.3d at 293.

The Walters Defendants contend that Relators' Complaint is also based upon the Medicare audits and reports they have submitted as exhibits to their Reply. Defendants first assert that on November 25, 2013, Medicare audited PRCH

24

"regarding the transactions Relators now complain of." Reply [54] at 6.

Defendants do not point to anything specific in this first audit to support their

contention, but note that Medicare "did not detect any practices on the part of the

provider that are inconsistent with sound fiscal or business practices and which

may result in unnecessary cost to the Medicare program." *Id.* at 6 n.6. The Court

fails to see how this audit plausibly contained allegations of fraud if Medicare took

the position that there was nothing improper with the cost reports.

The Walters Defendants then explain that on April 28, 2015, Medicare wrote

to Vaughan, notifying him that Medicare would reopen its review of PRCH's cost

report, and argue that Medicare "listed particular errors in PRCH's cost report for

the time period Relators now complain of." Reply [54] at 6. In support of this

claim, the Walters Defendants cite generally to the Medicare correspondence

attached as an exhibit to their Reply, but they offer no page number citations within

these exhibits. The Walters Defendants have not pointed the Court to any

specifics, such as particular errors or findings of wrongdoing, in the correspondence

that would support the assertion that the allegations contained in Relators'

Complaint are based on this audit. It is not the Court's function "to scour the

record in search of evidence" on a summary judgment motion. *Buehler v. City of

Austin/Austin Police Dep't*, 824 F.3d 548, 555 n.7 (5th Cir. 2016); *see also Williams

v. Merck & Co., Inc.*, 381 F. App'x 438, 444 (5th Cir. 2010) ("Citations on the order of

'See Pelkowski entire Deposition' and 'See deposition of Williams' are not what we,

as a court bound to apply the law to the facts, are looking for. Page numbers are

important.").

Based upon the Court's review of Medicare's Notice of Reopening, the report contained medical diagnostic terminology, complex billing codes, and complicated calculations. The Walters Defendants make no effort to explain these audits, nor do they draw any nexus between these reports and any specific details of the fraudulent scheme alleged in Relators' Complaint. Instead, the Walters Defendants merely make the conclusion that Medicare listed "errors" for the time period at issue in this case. However, the "publicly disclosed allegations" must be "as detailed as those in the relator's complaint." *Little*, 690 F.3d at 293. "When specifics are alleged" in a relator's complaint, "it is crucial to consider whether the disclosures correspond in scope and breadth." *Id.* Public disclosures will be sufficient if they provide details "such that the defendant's misconduct would have been readily identifiable" and "furnish evidence of the fraudulent scheme alleged." *Id.* The Walters Defendants have not shown that Relators' Complaint is based upon the allegations disclosed in the Medicare audits.

Lastly, Stepping Stones points to the Complaint filed by PRCH in the state court litigation, in which PRCH alleged that it was a CAH that received reimbursement for 101% of its costs, PRCH Compl. [65-1] ¶ 15, and therefore, the more costs PRCH incurred, the more it received from Medicare, *id.* ¶ 22. The Complaint averred that Boleware discussed contracting with Stepping Stones to provide IOP to increase fees paid to Performance Accounts. *Id.* ¶ 28. Stepping Stones contracted with PRCH, *id.* ¶ 30, and Stepping Stones' compensation

structure allegedly resulted in PRCH paying Stepping Stones exorbitant fees that were placed on cost reports and resulted in increased fees paid to Performance Accounts, *id.* ¶ 31. The PRCH Complaint further asserted that, through Walters' involvement with PRCH, PRCH entered into contracts to unlawfully increase Medicare reimbursement, which increased Walters' compensation through his Performance Accounts contract with PRCH. *Id.* ¶ 53. PRCH claimed that Walters entered into contracts and incurred costs to maximize Medicare reimbursement by abusing the Medicare reimbursement mechanism for CAHs. *Id.* ¶ 61.

These allegations supply specific details about the alleged fraudulent scheme and are in many respects nearly identical to the allegations set forth in Relators' Complaint here. One could have produced the substance of the Complaint by synthesizing the description of the scheme set forth in the PRCH complaint. Relators offer no argument, nor have they produced any evidence, to establish that there is a genuine dispute of material fact as to whether their present allegations are based on these particular disclosures. Relators' Complaint is thus "based upon" these public disclosures.

        c.     <u>Whether Relators are an original source</u>

In order to survive summary judgment on their pre-2010 FCA claims, then, Relators must raise a genuine issue of material fact as to whether they are original sources of the information, otherwise their claims for conduct occurring prior to March 23, 2010, will be barred by the public disclosure provision. Prior to the

amendments, the original source exception required a relator to demonstrate that: (1) the relator has "direct and independent knowledge of the information on which the allegations are based;" and (2) the relator has "voluntarily provided the information to the Government before filing" the *qui tam* action. *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 177 (5th Cir. 2004).

"In order to be 'direct,' the information must be firsthand knowledge." *United States ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008) (citation omitted). "Knowledge is direct if it is derived from the source without interruption or gained by the relator's own efforts rather than learned second-hand through the efforts of others." *Solomon*, 878 F.3d at 147. And "knowledge is independent if it is not derived from the public disclosure." *Id.* (citations and quotation marks omitted). It is "Relators' burden to show that they qualif[y] under the original source exception." *United States ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318, 325 (5th Cir. 2017).

To support their position that they qualify as original sources, Vaughan and Monsour have each submitted an affidavit. The only statement Monsour makes with regard to his acquisition of knowledge of the relevant information is his assertion that he "originally learned of the fraudulent conduct described in the Complaint in this case through my service as a consultant engaged by the North Sunflower Medical Center" and PRCH. Monsour Aff. [51-3] ¶ 4. This conclusory assertion is insufficient to create a fact question on whether Monsour was an

original source.

Vaughan avers that from 2012 to 2017, he served as CEO and Administrator of PRCH, Vaughan Aff. [69-1] ¶ 4, and that in 2012 he "began personally to analyze contracts which PRCH had previously entered with private consultants, vendors, and health care providers," *id.* ¶ 5.   As a result of his "own review" of those documents, Vaughan maintains that he determined that the contract between PRCH and Walters resulted in PRCH paying for costs that were improperly included on Medicare cost reports.   *Id.*   Vaughan also claims that he determined through his "own initiative" in 2012 that the driving force behind the excessive costs was a contract in which Walters was promised a significant percentage of revenue in exchange for recommending vendors and service providers to PRCH.   *Id.*

Vaughan next asserts that Monsour had "direct experience" with a contract between North Sunflower Medical Center and a company owned by Walters, in which Walters was promised a fraction of all of the hospital's revenue.   *Id.* ¶ 6. Vaughan alleges that he learned that Franklin County Memorial Hospital entered into a similar contingency-style contract with Walters, and that Monsour was familiar from his experience that other CAHs entered into such contracts with Walters.   *Id.*   Finally, Vaughan states that through their own efforts, he and Monsour learned of the facts included in the Complaint.   *Id.*

The foregoing is not sufficient to create a genuine dispute of material fact that Relators are original sources with respect to the pre-2010 claims.   First, Relators do not make any assertion that they learned of Stepping Stones' allegedly

fraudulent conduct first-hand.    In fact, Relators' affidavits do not even mention

Stepping Stones.

Second, Relators have not provided significant, probative evidence that they

are first-hand or original sources as to the allegations of false claims submitted by

hospitals other than PRCH.    The broad and general statements in their Affidavits

do not explain how they gained knowledge firsthand, uninterrupted from the

source, rather than second-hand through the efforts of someone else, of the facts

relating to North Sunflower and Franklin County hospitals.    Rather, Relators'

general assertions that they had "direct experience," were "familiar" with the

contracts, and "learned" of the fraudulent conduct are vague and conclusory.    This

is insufficient to create a genuine issue of material fact that Relators were original

sources of the allegations relating to hospitals other than PRCH.    *See Kariuki v.

Tarango*, 709 F.3d 495, 505 (5th Cir. 2013).    Relators make no mention of

discovering any first-hand information relating to Tallahatchie General Hospital.

Moreover, a relator must also establish his original source status as to each

theory of fraud alleged in a complaint.    *King*, 871 F.3d at 327 (citing *Rockwell Int'l

Corp. v. United States*, 549 U.S. 457, 473 (2007)).    Relators claim in the Complaint

that costs included in the Hospital Defendants' Medicare cost reports were not

medically necessary for the delivery of health care services to patients, nor were

they reasonably priced, such that they violated the FCA.    Compl. [3] ¶¶ 43, 70.

For example, the Complaint alleges that Pierce and Piercon agreed to charge

exorbitant prices for construction projects and fraudulently structured their invoices

to evade Medicare requirements, *id.* ¶ 59, that Wellness sold to Hospital Defendants construction materials at exorbitant prices, *id.* ¶ 60, that PRCH paid Wellness for a survey that was never conducted, *id.* ¶ 62, and that Thomley caused PRCH to incur multiple expenses that were not related to the delivery of health care services, *id.* ¶ 65. Beyond broad and general statements that Vaughn was employed at PRCH from 2012 to 2017 and reviewed certain contracts, Relators have not explained in their Affidavits how they have direct knowledge of each of these theories of fraud. This is insufficient to create a material question of fact on whether they were original sources.

Lastly, the Walters Defendants contend that Relators do not qualify as original sources because they did not work at PRCH during the timeframe encompassing the pre-2010 conduct. Defs.' Mem. [45] at 11. Courts have found that a relator fails to satisfy the original source exception where the relator was not employed by the defendant when the allegedly fraudulent conduct occurred. *See Rockwell*, 549 U.S. at 475 (concluding that relator's knowledge fell short because he was not employed by the defendant during the relevant time period and thus could not have known about the predicate conduct and subsequent false statements to the government); *Colquitt*, 858 F.3d at 376-77 (same). Vaughan alleges that he began working at PRCH in 2012, yet the Complaint maintains that Defendants' cost padding scheme began in 2005, Compl. [3] ¶ 43, and alleges that the fraudulent conduct occurred prior to 2012, *id.* ¶ 48-49, 54, 61.

In sum, Relators have failed to raise a genuine dispute of material fact

sufficient to sustain their burden of demonstrating that they are an original source as to their claims for all of the alleged conduct that occurred prior to March 23, 2010. Defendants are entitled to summary judgment on these claims and they will be dismissed with prejudice, but without prejudice to the rights of the United States.

3.    Relators' post-2010 claims and the public disclosure bar

Turning to Relators' claims for conduct that occurred on or after March 23, 2010, though the Fifth Circuit has acknowledged that the public disclosure bar is no longer jurisdictional, it has not established what legal standard to apply to arguments for dismissal under the amended disclosure bar. Other circuits have decided that such arguments should be treated as motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See, e.g., United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 300 (3d Cir. 2016); *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 810 (11th Cir. 2015).

In support of their public disclosure bar arguments, Defendants have submitted matters outside the pleadings such as news media reports. Federal Rule of Civil Procedure 12(d) states that if, on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Rule 12(d) requires that all parties "be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

Here, Relators were given a reasonable opportunity to present evidence in response to Defendants' Motions. Relators were already on notice that at least some of their claims would be analyzed under a Rule 56 standard, as Defendants' public disclosure challenge to Relators' claims prior to the 2010 amendments is "treated as a motion for summary judgment." *Jamison*, 649 F.3d at 326. Evidence on the issues of whether Relators' Complaint was based on public disclosures or whether Relators voluntarily disclosed to the Government information on which their allegations were based would necessarily be within Relators' knowledge and possession, and would not require discovery in order for them to respond to Defendants' Motions. Therefore, Relators have not been prejudiced by having to respond to a motion for summary judgment before discovery commenced, and the Court will treat Defendants' arguments for dismissal under the public disclosure bar for conduct allegedly occurring on or after March 23, 2010, as a motion for summary judgment.

a. <u>Whether there was a public disclosure</u>

The 2010 amendments narrowed the scope of what constitutes a public disclosure in a "criminal, civil, or administrative hearing." Under the current version of the FCA, in order for a civil hearing to constitute a public disclosure, it must be a federal hearing in which the United States Government or its agent is a party. 31 U.S.C. § 3730(e)(4)(A)(i). The United States was not a party in the PRCH lawsuit; therefore, neither the PRCH complaint nor any of the other filings in that suit qualify as a public disclosure under the current version of the FCA.

However, the United States did bring the *in rem* action, which does constitute a public disclosure under the statute.

Thomley solely relies on the PRCH Complaint in support of her argument that Relators' allegations were subject to a previous public disclosure. Def.'s Mot. [36] at 3. Because this does not constitute a public disclosure under the post-2010 FCA, Thomley has not demonstrated that Relators' allegations with respect to her are subject to the public disclosure bar.

The online news reports submitted by Defendants are "news media" and were also public disclosures. As discussed above, the Walters Defendants have not shown that PRCH's letters to the United States Attorney's Office were disclosed within a federal investigation. For the same reasons previously stated by the Court, the Medicare audits and reports constitute public disclosures within the FCA. In sum, the Walters Defendants and Stepping Stones have identified the *In Rem* Complaint, online news articles, and Medicare audits as public disclosures under the current version of the FCA.

> b. <u>Whether substantially the same allegations in Relators'
> Complaint were publicly disclosed</u>

The Court's analysis at the second step, determining whether the *qui tam* action is based upon such publicly disclosed allegations, appears to remain unchanged from its analysis of the pre-2010 claims. The pre-2010 FCA barred *qui tam* actions "based upon" public disclosures. 31 U.S.C. § 3730(e)(4)(A) (2005). The post-2010 public disclosure bar applies to actions if "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed."

31 U.S.C. § 3730(e)(4)A). This change in language is not significant here because the Fifth Circuit has concluded that under the pre-2010 public disclosure bar, a *qui tam* complaint is based upon public disclosures if the disclosures "provide specific details about the fraudulent scheme and the types of actions involved in it sufficient to set the government on the trail of fraud." *Solomon*, 878 F.3d at 144. The Fifth Circuit has not specifically adopted this test for post-2010 FCA claims or spoken to what standard does apply, but its use of this standard for pre-2010 claims is established. In addition, the Seventh Circuit has held that its analysis of "this step is therefore the same under either version of the statute." *Cause of Action v. Chicago Transit Auth.*, 815 F.3d 267, 281 (7th Cir. 2016). Therefore, in determining whether "substantially the same allegations or transactions" in this case were publicly disclosed, the Court will apply the same standard articulated by the Fifth Circuit for assessing whether the action is "based upon" public disclosures under the pre-2010 FCA.

As the Court explained in its decision as to Relators' pre-2010 claims, Defendants have not carried their initial summary judgment burden on the post-2010 claims by relying on the *In Rem* Complaint, news reports, and Medicare reports, because these documents do not plausibly contain the specific allegations upon which the present Complaint is based. Unlike the Court's evaluation of the pre-2010 claims, however, Defendants cannot rely on the PRCH litigation to sustain their initial summary judgment burden on the post-2010 claims. Based on the record before the Court, Relators' claims for alleged conduct occurring on or after

March 23, 2010, are not precluded by public disclosure bar, and summary judgment should be denied on this question.

### 4. Defendants' Rule 12(b)(6) and 9(b) arguments

Defendants alternatively move to dismiss the Complaint on grounds that it fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) and fails to comply with the heightened pleading standard under Rule 9(b). To state a claim under subsection (a)(1)(A) of the FCA, a relator must allege that the defendant has "knowingly present[ed], or cause[d] to be presented, a false or fraudulent claim for payment or approval" to the United States Government. 31 U.S.C. § 3729(a)(1)(A). To state a claim under subsection (a)(1)(B), the relator must allege that the defendant "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim" paid by the Government. *Id.* § 3729(a)(1)(B).

Claims under the FCA must comply with Rule 9(b)'s heightened pleading standard and must set forth the "who, what, when, where, and how" of the alleged fraud. *Colquitt*, 858 F.3d at 371. "To plead fraud adequately, the plaintiff must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Sullivan v. Leor Energy LLC*, 600 F.3d 542, 551 (5th Cir. 2010). However, the Fifth Circuit has stated that the "'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)," but rather, "the rule is context specific and flexible and must remain so to achieve the remedial purpose of the False Claim

Act." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). Therefore, an FCA complaint, "if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* "A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997).

"The elements of the [underlying] AKS violation must also be pleaded with particularity under Rule 9(b), because they are brought as a FCA claim." *United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013). The Anti-Kickback Statute, as relevant here, criminalizes

> whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind –
>
> > (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
> >
> > (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program[.]

42 U.S.C. § 1320a-7b(b)(1). "If a provider has violated the statute, then claims he or she submits to Medicare may be false claims when the provider certified compliance with the kickback statute in submitting a claim." *Colquitt*, 858 F.3d at 371.

a.  <u>Stepping Stones and Deardorff's arguments for dismissal under</u>
    <u>Rules 12(b)(6) and 9(b)</u>

Stepping Stones and Deardorff contend that Relators do not allege that they affirmatively assisted the Hospital Defendants' presentation of false claims or the Hospital Defendants' making of false records.   Defs.' Mem. [66] at 7.   Relators counter that the FCA applies to anyone who knowingly assists in causing the Government to pay claims grounded in fraud, and that the Complaint alleges that Stepping Stones violated the AKS.   Pls.' Mem. [69] at 2-3.

Here, the Complaint satisfies Rule 9(b) on its claims against Stepping Stones and Deardorff.   Relators allege that Stepping Stones and Deardorff received payments from Hospital Defendants for IOPs which neither Stepping Stones nor Deardorff actually provided, but were intended to increase reported costs and Medicare payments.   Compl. [3] ¶¶ 43, 55.   Relators contend that Stepping Stones and Deardorff entered into an agreement to develop increased costs from the operation of geriatric IOPs.   *Id.* ¶ 53.   Relators provide one particular example of this agreement between Deardorff, through Stepping Stones, and PRCH.   *Id.* ¶ 54. Starting in 2011, PRCH allegedly agreed to pay Stepping Stones increased fractions of Medicare gross revenues received from any IOP operation.   *Id.*   The Complaint alleges specific percentages the Hospital Defendants agreed to pay these Defendants based on gross revenues.   *Id.*

Relators maintain that though these services were directly delivered by the Hospital, these payments were designed to and caused increased reported costs for IOPs, and these agreements were not "intended or designed" to compensate for

38

actual or necessary services that Stepping Stones rendered for patient care. *Id.* ¶ 55. In addition, Deardorff "knowingly and willfully offered, solicited, paid, and received" these payments as remuneration for "arranging for and recommending or ordering services and expenditures for which they knew and intended that cost-based payments would be made to the Hospital Defendants by the Medicare system." *Id.* ¶ 66. Relators plead that these Defendants knew that compliance with the AKS was material and a prerequisite to entitlement to payments from Medicare, and that their costs could not lawfully be reported on Medicare cost reports. *Id.* ¶¶ 64-65. Specifically, Relators assert that Deardorff, in a conversation with Relator Vaughn, justified an agreement to donate to the planned new PRCH Foundation if revenues reached a certain amount by noting that Stepping Stones' fees were cost-based and that the hospital receives 101% of these costs. *Id.* ¶ 61.

Relators have pled both the elements of the AKS violation and the FCA claims with sufficient particularity. First, the Complaint alleges that Stepping Stones and Deardorff violated the AKS by knowingly and willfully receiving remuneration, namely increased fractions of Medicare gross revenues received from any IOP operation; and that they received this compensation in cash in return for arranging for IOP services that were not direct or necessary, simply to increase direct Medicare costs for which payment was made in part under Medicare. *See* 42 U.S.C. § 1320a-7b(b)(1)(B). Relators have identified when the agreement occurred, beginning in 2011, and who received the alleged kickback, Stepping

Stones and Deardorff.   The Complaint offers specifics of the agreement between them, even providing specificity as to the agreed percentages of compensation. Relators allege how this was an illegal kickback—that receiving compensation for knowingly including unnecessary and indirect costs for these IOP services which were not provided by these Defendants, was prohibited by the AKS and the FCA.[2]

Although Relators do not allege details as to the contents and specific dates of an actually submitted false claim, they do allege details of a scheme and reliable indicia that lead to a strong inference that claims were actually submitted.   *See Grubbs*, 565 F.3d at 190.   The Complaint sets out the particular workings of a scheme whereby Stepping Stones and Deardorff agreed to increase costs through providing the Hospital Defendants IOP services in exchange for percentages of gross revenues received from Medicare for the IOP operation, and that these Defendants did so knowing that their costs were not direct or necessary for patient care.

Part of the scheme was allegedly conveyed directly to Relator Vaughn. While these Defendants argue that they did not cause the false payments by Medicare, "[i]t would stretch the imagination to infer" that Stepping Stones and Deardorff did not know that the Defendant Hospitals would include their costs in claims submitted to, and subsequently paid by, the Government given Deardorff's own statement to Relator Vaughn.[3]   *Id*. at 192.   Similarly, it can logically be

---

[2] Although the Department of Health and Human Services has promulgated regulations stating that remuneration does not include certain management contracts, to the extent that this agreement could be considered one, the regulations specifically prohibit compensation from taking into account volume of any referrals or business otherwise generated.   42 C.F.R. § 1001.952(d)(5).

[3] Stepping Stones and Deardorff also argue that Medicare never paid for their services because they did not perform the IOPs.   Def's Mot. [66] at 9; Defs.' Reply [75] at 2. However, the Complaint in fact alleges that Deardorff both knew that the Hospital Defendants included Stepping Stones'

inferred that Stepping Stones billed the hospital for its services, thereby knowingly causing the hospital to use its records to get false claims paid by the Government.

The Court is satisfied that the Complaint includes "both particular details of a scheme to present fraudulent bills to the Government and allegations making it likely bills were actually submitted," thus satisfying Rule 9(b).    *Id.* at 191. Accepting all well-pleaded facts as true and viewing those facts in the light most favorable to them, Relators have adequately stated a claim against Defendants Stepping Stones and Deardorff under Rule 9(b)'s context specific but heightened pleading standard for FCA claims.

        b.     The Walters Defendants' arguments for dismissal under Rules 12(b)(6) and 9(b)

The only argument advanced by the Walters Defendants that the Complaint fails to state a claim under Rule 12(b)(6) is a single assertion that "[t]he allegations against the Walters Defendants are nothing more than generic legal conclusions based upon impermissibly vague allegations."    Defs.' Mem. [45] at 18.    The Walters Defendants do not reference any particular allegations in the Complaint and do not offer an explanation as to how such allegations are mere legal conclusions or are impermissibly vague.    Similarly, the Walters Defendants assert that Relators' "failure to comply with the Rule 9(b) pleading standard warrants dismissal of their fraud claims," *id.* at 16, but they offer no legal argument or analysis in support of this contention.

---

services in cost reports and that Medicare paid for these services, despite the fact that they were not direct.    Relators in fact allege that this is the crux of the fraudulent scheme itself.

"All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2018). "It is not enough to assert that the 'law' authorizes or prohibits a certain action; a party has to explain why." *Verso Paper, LLC v. HireRight, Inc.*, No. 3:11-MC-628-CWR-LRA, 2012 WL 2376046, at *5 (S.D. Miss. June 22, 2012). The Walters Defendants have not carried their initial burden on this argument.

Moreover, the Court's review of the Complaint reveals that Relators allege that Walters recruited Pierce and Piercon to conduct construction projects for PRCH and to charge exorbitant prices but split the invoices for such work to evidence Medicare requirements; that Walters recruited Wellness Environments to sell building materials at exorbitant prices arranged for by Walters in order to increase Medicare costs; that Thomley used her position as an employee of Performance Accounts to cause PRCH to incur multiple expenses unnecessary to the delivery of healthcare services; and that Walters caused Performance Leasing to lease equipment at exorbitant rates designed to increase costs. The Walters Defendants have not adequately demonstrated that the Complaint fails to state a claim or fails to plead fraud with particularity.

   c. <u>Thomley's arguments for dismissal under Rules 12(b)(6) and 9(b)</u>

Thomley contends that Relators fail to state a claim under the FCA against her, and fail to plead a violation of the FCA with particularity as required by Rules 12(b)(6) and 9(b). Def.'s Mot. [36] at 2. Thomley argues Relators fail to allege

that she submitted any cost report or other invoice to, entered into any contract with, or received payment from, the federal government. *Id.* at 2. Without offering legal argument or authority, Thomley maintains that Relators only assert generally that she participated in and profited from the alleged scheme. *Id.* at 2-3.

In response, Relators argue that there is sufficient information to meet the requirements of Rule 12(b)(6) and Rule 9(b). Pls.' Resp. [47] at 1-3. Specifically, Relators contend that Thomley benefited financially from a number of transactions including a salary from the Pearl River County Hospital, purchases by the hospital of insurance policies sold to them by her husband, and payments by the hospital of personal expenses on her American Express. *Id.* at 6-7.

Thomley has failed to carry her initial burden to "prove that no legally cognizable claim for relief exists." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2018); *Verso Paper, LLC*, 2010 WL 2376046, at *6 (citing *de la O v. Hous. Auth. Of City of El Paso, Tex.*, 417 F.3d 495, 501 (5th Cir. 2005)). Additionally, the Court's review of the Complaint reveals that Relators allege that Thomley used her position as an employee of Performance Accounts to cause PRCH to incur multiple expenses unnecessary to the delivery of healthcare services. Relators enumerate these transactions and specifically assert that these transactions were included as direct health care expenses on Defendant Hospital's expense reports. Thomley has not adequately demonstrated that the Complaint fails to state a claim or fails to plead fraud with particularity.

5. The Walters Defendants' remaining arguments

a. Special damages under Rule 9(g)

The Walters Defendants also argue that the Complaint fails to specifically plead special damages. Mem. [45] at 16. Federal Rule of Civil Procedure 9(g) provides that "[i]f an item of special damage is claimed, it must be specifically stated." This Rule does not "requir[e] that the plaintiff plead the amount as well as the type of any special damage claim," rather, "the rule is designed to inform defending parties as to the nature of the damages claimed in order to avoid surprise; and to inform the court of the substance of the complaint." *Great Am. Indem. Co. v. Brown*, 307 F.2d 306, 308 (5th Cir. 1962).

Relators seek a judgment against Defendants for three times the amount of the Government's actual damages, civil penalties as allowed by law for each false claim or record, and costs. Compl. [3] at 30. Relators also seek a percentage of all penalties and damages the United States obtains from any Defendant, along with attorneys' fees and costs. *Id.* at 31. Defendants have been adequately informed as to the nature of damages claimed, and dismissal pursuant to Rule 9(g) would not be appropriate.

b. Res judicata

Noting that PRCH settled its claims against the Walters Defendants in PRCH's state court litigation and that all such claims were dismissed with prejudice, the Walters Defendants posit that Relators' claims are barred by the doctrine of res judicata and by a prior judgment of dismissal. Defs.' Mem. [45] at

19-21.   Thomley also asserts, in conclusory fashion, that Relators' action is barred by the doctrines of res judicata and collateral estoppel.   Def.'s Mot. [36] at 4. Under 28 U.S.C. § 1738, federal courts are required "to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged."   *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982).   Accordingly, the preclusive effect of the judgment in state court between PRCH and the Walters Defendants, and of the Order of Dismissal between PRCH and Thomley, is determined according to Mississippi law.   *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

"Res judicata is a doctrine of claim preclusion," and "precludes parties from litigating in a second action claims within the scope of the judgment of the first action."   *Anderson v. LaVere*, 895 So. 2d 828, 832 (Miss. 2004) (citation omitted). This includes not only claims which were actually made in the prior suit, but also claims that should have been made.   *Id.*   In other words, "res judicata bars litigation in a second lawsuit on the same cause of action of all grounds for, or defenses to, recovery that were available to the parties in the first action, regardless of whether they were asserted or determined in the prior proceeding."   *Id.* at 832-33 (citations omitted).

In Mississippi, four identities must generally be present for res judicata to apply: "(1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made."   *Id.* at 832.   "In

addition to the four identities, a fifth requirement is that the prior judgment must be a final judgment that was adjudicated on the merits." *EMC Mortg. Corp. v. Carmichael*, 17 So. 3d 1087, 1090 (Miss. 2009). A defendant bears the burden of establishing res judicata as a defense. *Hinton v. Rolison*, 175 So. 3d 1252, 1258 (Miss. 2015).

Relators argue that the identity of cause of action is not present because no FCA violations were alleged in the PRCH litigation, that the identity of parties is lacking because Relators and the United States were not parties to the PRCH litigation, and that there was no adjudication on the merits of any claim in state court against the Walters Defendants or against Thomley. Pls.' Resp. [51] at 14-15; Pls.' Resp. [47] at 11-14. With regard to the identity of parties, the Walters Defendants assert that Relators are in privity with PRCH, "as Vaughan is the CEO of PRCH." Defs.' Mem. [45] at 20. Thomley asserts only that Relators' claims are barred by res judicata and collateral estoppel. Def.'s Mot. [36] at 4.

"To satisfy the identity of parties element, strict identity of the parties is not necessary." *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 236 (Miss. 2005). Rather, res judicata can apply to a nonparty "so long as it is in 'privity' with" a named party in the first action. *Id.* at 236-37. Privity is "a broad concept" that "expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties." *Little v. V & G Welding Supply, Inc.*, 704 So. 2d

1336, 1339 (Miss. 1997) (citations omitted).

The Walters Defendants offer no argument how Monsour was in privity with PRCH, and have not carried their burden to prove res judicata as a defense to Monsour's claims as Relator. As for Vaughan, the Complaint asserts that he was the CEO and Administrator of PRCH, Compl. [3] ¶ 3, and PRCH alleged in its state court complaint that it was a non-profit corporation, PRCH Compl. [65-1] ¶ 1.

In *Jarrett v. Dillard*, the question before the Supreme Court of Mississippi was "whether a judgment obtained against a corporation in a workers' compensation action may be enforced against the corporation's president and majority shareholder where that officer was not a named party in the original suit, or whether that claim is blocked by claim preclusion." 167 So. 3d 1147, 1151-52 (Miss. 2015). The court concluded that the judgment may be enforced against such an officer and shareholder where: 1) "that shareholder was the alter ego of the corporation;" 2) the shareholder "controlled the prior litigation;" or 3) "the shareholders are also the only officers of the corporation, [and] they necessarily control prior litigation." *Id.* at 1152-53. Notably, the supreme court did not create a blanket rule that an officer, president, or shareholder is always in privity with a corporation that was a party to previous litigation, and the Walters Defendants have not pointed the Court to any Mississippi authority supporting such a proposition.

The Walters Defendants have not argued that Vaughan was the alter ego of PRCH, that he controlled the prior litigation, or that he was the only officer of

PRCH.   Moreover, in the Court's review of the record, there is nothing to indicate that Vaughan was the alter ego of PRCH or that he was the only officer of PRCH. *See Fason v. Trussell Enters., Inc.*, 120 So. 3d 454, 456, 460 (Miss. Ct. App. 2013) (finding privity between corporation and "the agent, president, and sole shareholder.").

The *Jarrett* court acknowledged that "a nonparty is bound by a judgment if he 'assumed control' over the litigation in which that judgment was rendered."   167 So. 3d at 1152 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 895 (2008)).   In *Taylor*, 553 U.S. at 895, the United States Supreme Court cited the Restatement (Second) of Judgments § 39 (1982) for this proposition.   The Restatement explains that "[t]o have control of litigation requires that a person have effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action" and "have control over the opportunity to obtain review."   *Id.* § 39 cmt. c.   "It is sufficient that the choices were in the hands of counsel responsible to the controlling person;" however, it is insufficient if "the person merely contributed funds or advice in support of the party, supplied counsel to the party, or appeared as amicus curiae." *Id.*

Vaughan states in his affidavit that he engaged, "on behalf of PRCH," attorney Tom Kirkland "to represent PRCH . . . to attempt to recover from Walters and others, on behalf of PRCH, costs improperly paid by PRCH."   Vaughan Aff. [69-1] ¶ 8.   Vaughan further maintains that he and Monsour, "before that State Court lawsuit was filed," explained to Mr. Kirkland "the documents and analysis"

which he believed "justified such a litigation effort." *Id.*   According to Vaughan,

"[a]ll of the activity by Kirkland and that firm which resulted in that [PRCH]

litigation . . . was conducted under my general supervision and approval as the CEO

of Mr. Kirkland's client, the PRCH." *Id.* ¶ 9.   Vaughan thus admits that he

caused the PRCH lawsuit to be filed, and that he supervised and approved the

activity that *resulted* in the PRCH litigation, which is a strong indication that he

controlled the pre-litigation activity.   However, there is no evidence that Vaughan

maintained control over the litigation once it commenced, or that counsel was

responsible to him throughout the litigation.   Based on the record before the Court,

Thomley and the Walters Defendants have not carried their burden of showing that

Relators' claims are barred by res judicata.

      c.    <u>Accord and satisfaction</u>

      The Walters Defendants contend that the settlement between them and

PRCH amounts to an accord and satisfaction, barring Relators' Complaint.   Defs.'

Mem. [45] at 21.   Under Mississippi law, accord and satisfaction requires the

presence of four elements:

> (1) something of value offered in full satisfaction of a demand; (2)
> accompanied by acts and declarations as amount to a condition that if
> the thing is accepted, it is accepted in satisfaction; (3) *the party* offered
> the thing of value is bound to understand that if he takes it, he takes
> subject to such conditions; and (4) *the party* actually does accept the
> item.

*Channel v. Loyacono*, 954 So. 2d 415, 426 (Miss. 2007) (citation omitted) (emphases

added).

      The Walters Defendants have not shown that Relators were "the party" that

49

accepted the settlement in the PRCH litigation, and their argument based on accord and satisfaction is otherwise unpersuasive.   To the extent their Motion relies on this theory, it will be denied.

## III. CONCLUSION

The Court concludes based upon the record that Defendants Performance Accounts Receivable, LLC, Performance Capital Leasing, LLC, and Wade Walters' Motion [44] to Dismiss and Motion for Summary Judgment should be granted in part and denied in part, that Defendants Stepping Stones Healthcare, LLC, and Clayton Deardorff's Motion [65] to Dismiss and Motion for Summary Judgment should be granted in part and denied in part, and that Defendant Hope Thomley's Motion to Dismiss should be granted in part and denied in part.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant Hope Thomley's Motion to Dismiss [36] is **GRANTED IN PART** as to Relators' claims for conduct occurring before March 23, 2010, and these claims are **DISMISSED WITH PREJUDICE**, but without prejudice to any such claim by the United States.   The Motion will be **DENIED IN PART** as to Relators' remaining claims against Thomley for conduct occurring after March 23, 2010.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Defendants Performance Accounts Receivable, LLC, Performance Capital Leasing, LLC, and Wade Walters' Motion [44] to Dismiss and Motion for Summary Judgment is **GRANTED IN PART** as to Relators' claims for conduct occurring before March 23, 2010, and these claims are **DISMISSED WITH PREJUDICE**, but without

prejudice to any such claim by the United States. The Motion will be **DENIED IN PART** as to Relators' remaining claims against these Defendants for conduct occurring after March 23, 2010.

 **IT IS, FURTHER, ORDERED AND ADJUDGED** that Defendants Stepping Stones Healthcare, LLC, and Clayton Deardorff's Motion [65] to Dismiss and Motion for Summary Judgment is **GRANTED IN PART** as to any claims occurring before March 23, 2010, and these claims are **DISMISSED WITH PREJUDICE**, but without prejudice to any such claims by the United States. The Motion will be **DENIED IN PART** as to Relators' remaining claims against these Defendants for conduct occurring after March 23, 2010.

 **SO ORDERED AND ADJUDGED**, this the 28th day of September, 2018.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE